**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**
**OMAHA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action No. _8:14-cv-255_____ |
| OMAHA TRIBE OF NEBRASKA, and OMAHA TRIBAL UTILITY COMMISSION | |
| Defendants. | |

**COMPLAINT**

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorney acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA") files this Complaint, and alleges as follows:

**NATURE OF ACTION**

1.      This is a civil action brought against the Omaha Tribe of Nebraska and the Omaha Tribal Utilities Commission (collectively "the Tribe" or "Defendants") to obtain injunctive relief and civil penalties pursuant to Section 1431 of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300i; Sections 309(a), (b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(a), (b) and (d); and Section 7003(b) of the Solid Waste Disposal Act, as amended by and hereafter referred to as the Resource Conservation and Recovery Act ("RCRA"), and subsequent amendments, 42 U.S.C. § 6973(b), for violations of a March 2011 Administrative Order on Consent entered between EPA and the Defendants.  This order required the Tribe to undertake a variety of measures to ensure compliance with the SDWA, CWA, and RCRA.  More specifically, this civil action seeks to (a) require the Tribe to perform corrective measures to

1

protect the environment and the health of consumers served by the Macy Public Drinking Water System ("Drinking Water System"), the Macy Public Wastewater Treatment Facility ("Wastewater Facility" or "WWTF"), and the Mother Earth Recycling Center ("Recycling Facility") (collectively the "Tribal Utilities"); and (b) require the Tribe to achieve and maintain compliance with the CWA, SDWA, RCRA, and their respective implementing regulations, and an Administrative Order on Consent entered into by the Tribe and EPA, pursuant to the authority of Section 1431 of the SDWA, Section 309 of the CWA, and Section 7003 of RCRA, that became effective on March 7, 2011 ("March 2011 AOC").

## JURISDICTION, VENUE, AUTHORITY AND NOTICE

2.      This Court has jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; Sections 309(b) and 504(a) of the CWA, 33 U.S.C. §§ 1319(b) and 1364(a); Sections 1414 and 1431(a) of the SDWA, 42 U.S.C. §§ 300g-3, 300i(a); and Section 7003 of RCRA, 42 U.S.C. § 6973.

3.      This Court has jurisdiction over Defendants because the Defendants are each a "person" within the meaning of Section 1401(12) of the SDWA, 42 U.S.C. § 300f(12); Section 502(5) of the CWA, 33 U.S.C. § 1362 (5); Section 1004(15) of RCRA, 42 U.S.C. § 6903(15), for purposes of federal enforcement.

4.      Venue is proper in the District of Nebraska pursuant to 28 U.S.C §§ 1391(b) and 1395(a); CWA Sections 309(b) and (e) and 504, 33 U.S.C. §§ 1319(b) and (e), and 1364; SDWA Sections 1414(b) and (g)(3(C), and 1431(a), 42 U.S.C. §§ 300g-3(b) and (g)(3)(C), and 300i(a); and RCRA Sections 3008(a) and 7003(b), 42 U.S.C.§§ 6928(a) and 6973(b), because it is the judicial district where the Defendants are located, where a substantial part of the events or omissions giving rise to the claim occurred, and where the alleged violations occurred.

2

5.      Authority to bring this civil action on behalf of the United States is vested in the Attorney General of the United States pursuant to Section 506 of the CWA, 33 U.S.C. § 1366; Section 1450(f) of the SDWA, 42 U.S.C. § 300j-9(f); and 28 U.S.C. §§ 516 and 519.

6.      EPA is the authorized agency to enforce the RCRA and CWA programs and has primary enforcement responsibility for the SDWA public water supply protection program within the Omaha Tribe of Nebraska Indian Reservation.  No other governmental authority has applied for and been approved to administer the RCRA, SDWA, or CWA programs on the Omaha Tribe of Nebraska Indian Reservation.

**DEFENDANT**

7.      The Omaha Tribe of Nebraska is a federally recognized Indian tribal government and therefore, an "Indian Tribe" within the meaning of Section 1401(14) of the SDWA, 42 U.S.C. § 300f(14).  The Tribe is governed by the seven member Tribal Council duly authorized according to the Constitution and By-laws of the Omaha Tribe of Nebraska and consisting of a Chairman, Vice-Chairman, Treasurer, Secretary, and three additional members.

8.      The Omaha Tribal Utility Commission was established by the Tribal Council in 1980 to manage and operate the public utility services of the Tribe on the Omaha Reservation.

9.      The Defendants are each a "municipality" as defined by SDWA Section 1401(10), 42 U.S.C. § 300f(10); CWA Section 502(4) CWA, 33 U.S.C. § 1362(4); and RCRA Section 1004(13), 42 U.S.C. § 6903(13), and "municipalities" are in turn a "person" as defined in SDWA Section 1401(12), 42 U.S.C. § 300f(12); CWA Section 502(5), 33 U.S.C. § 1362 (5); RCRA Section 1004(15), 42 U.S.C. § 6903(15).

10.      As the owner or operator of the Drinking Water System, Federal Identification Number 070000007, each Defendant is a "supplier of water" as that term is defined in section

3

1401(5) of the SDWA, 42 U.S.C. § 300f(5), and 40 C.F.R. § 141.2.  As provided in section 1411 of the SDWA, 42 U.S.C. § 300g, the Defendants are therefore required to comply with the SDWA and the National Primary Drinking Water Regulations ("NPDWRs") at 40 C.F.R. Part 141.

## STATUTORY AND REGULATORY FRAMEWORK

### A.   Safe Drinking Water Act

11.   Pursuant to Section 1412 of the SDWA, 42 U.S.C. § 300g-1, EPA promulgated the National Primary Drinking Water Regulations ("NPDWR") at 40 C.F.R. Part 141 to establish contaminant limitations, monitoring requirements, public notification requirements, and other requirements for regulated drinking water systems.  *See* 42 U.S.C. § 300f(1).

12.   The NPDWR requires that each owner or operator of a public water system must give notice for all violations of national primary drinking water regulations (NPDWR) and for other situations, including ". . . violations or situations with significant potential to have serious adverse effect on human health as a result of short-term exposure, as determined by the primacy agency either in its regulations or on a case-by-case basis." 40 C.F.R. § 141.202(a)(9).

13.   When such a violation occurs, a public water system must (1) provide a public notice as soon as practical but no later than 24 hours after the system learns of the violation; (2) initiate consultation with the primacy agency as soon as practical, but no later than 24 hours after the public water system learns of the violation or situation, to determine additional public notice requirements; and (3) comply with any additional public notification requirements that are established as a result of the consultation with the primacy agency. 40 C.F.R. § 141.202(b).

14.   For violations including monitoring and testing procedure requirements and failure to comply with the terms and conditions of any variance or exemption in place, a public

4

water system must provide the public notice as soon as practical, but no later than 30 days after the system learns of the violation.  If the public notice is posted, the notice must remain in place for as long as the violation or situation persists, but in no case for less than seven days, even if the violation or situation is resolved.  40 C.F.R. § 141.203.

15.     40 C.F.R. § 141.132 of the NPDWR requires that each public water system required to monitor under Subpart L of 40 C.F.R. Part 141 must develop and implement a monitoring plan.  The system must maintain the plan and make it available for inspection by the State and the general public no later than 30 days following the applicable compliance dates in § 141.130(b).

16.     EPA is authorized to issue an emergency administrative order pursuant to the emergency power provisions of Section 1431 of the SDWA, 42 U.S.C. § 300i(a), when appropriate State and local authorities have not acted to protect the public health.  EPA has primary enforcement responsibility for the SDWA in Indian Country.  42 U.S.C. § 300j-11.  The Tribe, as the local authority, failed to protect the public health pursuant to Section 1431 of the SDWA, 42 U.S.C. § 300i(a), and the State of Nebraska is not authorized to do so under the SDWA.

17.     Pursuant to Section 1431 of the SDWA, 42 U.S.C. § 300i(a), the United States may bring a civil judicial action to require compliance with an emergency administrative order issued by the EPA as well as to seek civil penalties for violations of such order.

18.     Section 1431(b) of SDWA, 42 U.S.C. § 300i(b), provides that any person who violates or refuses to comply with an emergency administrative order issued by EPA is subject to a civil penalty of up to $16,500 for each day in which such violation occurs or failure to comply continues on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation

5

Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection

Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69

Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec.

11, 2008).

### B.   Clean Water Act

19.     The CWA is designed to restore and maintain the chemical, physical and

biological integrity of the nation's waters.  33 U.S.C. § 1251(a).

20.     To accomplish the objectives of the CWA, Section 301(a) of the CWA, 33 U.S.C.

§ 1311(a) prohibits the discharge of pollutants by any person except in compliance with certain

sections of the CWA, including Sections 301 and 402, 33 U.S.C. §§ 1311 and 1342.

21.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), authorizes EPA to issue

National Pollutant Discharge Elimination System ("NPDES") permits for the discharge of

pollutants, but only in compliance with Section 301 of the CWA, 33 U.S.C. § 1311, and such

other conditions as EPA determines are necessary to carry out the provisions of the CWA.

22.     Section 309(a)(3) of the CWA, 33 U.S.C. § 1319(a)(3), authorizes EPA to issue

compliance orders whenever it finds that any person has violated Section 301 of the CWA or any

condition or limitation implementing such Section in an NPDES permit issued pursuant to

Section 402 of the CWA.

23.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes EPA to commence a

civil action for appropriate relief for violations of an order issued pursuant to Section 309(a) of

the CWA.

24.     The Court may assess civil penalties of up to $37,500 per day for each violation

of the order occurring on or after January 13, 2009, pursuant Section 309(d) of the CWA, 33

6

U.S.C. § 1319(d); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C.

§ 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701

note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40

C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008); and 74 Fed. Reg. 626-01 (Jan. 7,

2009).

## C.  Solid Waste Disposal Act, As Amended by
## Resource Conservation and Recovery Act

25.     One of the stated objectives of RCRA is, "to promote the protection of health and

the environment and to conserve valuable material and energy resources by ... prohibiting future

open dumping on the land and requiring the conversion of existing open dumps to facilities

which do not pose a danger to the environment or to health." 42 U.S.C. § 6902(a)(3).

26.     Section 4005(a) of RCRA, 42 U.S.C. § 6945(a) prohibits any solid waste

management practice or disposal of solid waste or hazardous waste that constitutes an open

dumping.

27.     RCRA Section 7003(a), 42 U.S.C. § 6973(a), provides in pertinent part:

[U]pon receipt of evidence that the past or present handling, storage, treatment,
transportation or disposal of any solid waste or hazardous waste may present an imminent
and substantial endangerment to health or the environment, the Administrator may bring
suit on behalf of the United States in the appropriate district court against any person
(including . . . any past or present owner or operator of a treatment, storage, or disposal
facility) who has contributed or is contributing to such handling, storage, treatment,
transportation, or disposal to restrain such person . . . [or] to order such person to take
such other action as may be necessary, or both . . ..

28.     Section 7003(b) of RCRA, 42 U.S.C. § 6973(b), authorizes EPA to bring a civil

action to enforce any EPA order issued under Section 7003(a) against any person who willfully

violates, or fails or refuses to comply with such order.

7

29.     The Court may assess civil penalties of up to $6,500 per day for each violation of an order occurring on or after March 16, 2004 but before January 13, 2009, and $7,500 per day for each violation occurring on or after January 13, 2009, pursuant to Section 7003(b) of RCRA, 42 U.S.C. § 6973(b); the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008); and 74 Fed. Reg. 626-01 (Jan. 7, 2009).

## GENERAL ALLEGATIONS

30.     The Omaha Tribe of Nebraska Indian Reservation ("Reservation") is located primarily in the southern part of Thurston County, Nebraska and northeastern Cuming County, Nebraska.  The largest community is located in Macy, Nebraska in Thurston County.

31.     The Defendants own and operate three utilities within the exterior boundaries of the Reservation and within Macy, Nebraska: the Macy Public Drinking Water System ("Drinking Water System"), the Mother Earth Recycling Center ("Recycling Facility"), and the Macy Public Wastewater Treatment Facility ("Wastewater Facility" or "WWTF") (collectively "Tribal Utilities").  The Defendants are responsible for providing public drinking water, wastewater treatment services, and solid waste disposal.

### Defendants' Public Drinking Water System

32.     Defendants own and operate a water treatment plant that supplies drinking water from a groundwater source to the public for human consumption through pipes to approximately 350 service connections in Macy, Nebraska.

8

33.     Defendants' water treatment plant and associated water distribution system are collectively known as the Drinking Water System.

34.     The Drinking Water System consists primarily of three groundwater supply wells, a mechanical treatment plant that uses aeration followed by filtration, chemical disinfection, treated water storage tanks, and a piping and distribution system.

35.     Customers serviced by the Drinking Water System include, but are not necessarily limited to, the Omaha Nation Public Schools, the Omaha Tribe youth center, and portions of the Carl T. Curtis Health Center which, among other things, houses a nursing home.

36.     The Drinking Water System is a "public water system" and a "community water system" as defined in Section 1401 of the SDWA, 42 U.S.C. § 300f and 40 C.F.R. § 141.2.

37.     Each Defendant is a supplier of water within the meaning of Section 1401(5) of the SDWA, 42 U.S.C. § 300f(5) and 40 C.F.R. § 141.2.

**Defendants' Wastewater Treatment Facility**

38.     The Defendants own and operate the Wastewater Facility for Macy, Nebraska. The WWTF treats domestic wastewater.

39.     The WWTF is designed to collect approximately 220,000 gallons of wastewater per day.  The WWTF primarily consists of a collection system that includes several miles of sewer pipes and a lift station, and a three-cell wastewater lagoon treatment system that discharges treated effluent to Blackbird Creek through Outfall 001.  The estimated total volume of the lagoon system is 179 acre-feet.

40.     The lagoon system is located adjacent to Blackbird Creek approximately 1.7 miles east of the Village of Macy, Nebraska.

41.     Blackbird Creek is a perennial tributary of the Missouri River.

9

42.     Blackbird Creek and the Missouri River are "waters of the United States" and "navigable waters" within the meaning of the CWA, 33 U.S.C. § 1251, *et seq*.

43.     The WWTF is a "point source" that discharges "pollutants" to Blackbird Creek, as defined by the CWA.  Defendants are therefore subject to the provisions of the CWA, 33 U.S.C. § 1251, *et seq*. and require a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

44.     On or about August 1, 2006, EPA issued NPDES Permit No. NE0061263 to Defendants, pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, with an expiration dated of September 30, 2011.  Defendants submitted a permit application dated February 28, 2011 and EPA administratively extended the terms of the NPDES Permit No. NE0061263, pending reissuance of the permit.  The permit was reissued effective October 29, 2012, with an expiration date of October 29, 2017.

45.     NPDES Permit No. NE0061263 authorizes Defendants to discharge treated wastewater from Defendants' WWTF into Blackbird Creek, subject to the effluent limitations and other conditions stated in the permit.

46.     NPDES Permit No. NE0061263 established effluent limitations, standard and supplemental operating conditions, as well as monitoring and reporting requirements for discharges from Outfall 001 at the WWTF.

47.     NPDES Permit No. NE0061263 does not authorize Defendants to discharge untreated sewage from its collection system into waters of the United States.

**Defendants' Mother Earth Recycling Facility**

48.     Defendants operate a facility known as the Mother Earth Recycling Center ("Recycling Facility") near Macy, Nebraska, in Thurston County, Nebraska, on land located within the exterior boundaries of the Reservation.

49.      The Recycling Facility is located approximately 0.75 miles from the Omaha Tribe's Youth Horse Barn Club, where youth from Macy, Nebraska go for riding.  The area surrounding the Recycling Facility is primarily farmland.

50.     The Recycling Facility is located in the alluvial floodplain of the Missouri River and is approximately 1.2 miles from the Missouri River.

51.     The Recycling Facility, constructed in 1999, was intended to be a bundling and processing center for recycling operations.  However, beginning sometime in the early 2000's, the Defendants began hauling trash to the Recycling Facility and allowing residents to haul trash to the Recycling Facility creating an open dump.

52.     The Recycling Facility is not a sanitary landfill which meets the criteria promulgated under RCRA Section 4004, 42 U.S.C. § 6944 and is not a facility for disposal of hazardous waste.

53.     The Defendants' handling, storage, treatment, transportation or disposal of "solid waste," as defined by RCRA Section 1004(27), 42 U.S.C. § 6903(27), at the Recycling Facility presented an imminent and substantial endangerment to health or the environment within the meaning of RCRA Section 7003, 42 U.S.C. § 6973.

**Efforts to Obtain Compliance and Violations**

*Drinking Water System*

54.     Since 2009, at least twelve boil water notices had been issued to the customers of the Defendants' Drinking Water System for events, including, but not limited to, frequent line breaks, leaks, pressure losses, and equipment malfunction.  In most of those situations, the Defendants also failed to notify EPA and the public of the drinking water system failures in violation of SDWA regulations.

55.     Because cracks, breaks, or joints are common in pipes and other components of distribution systems, loss of pressure can draw water from outside into the distribution system, a condition known as back siphonage, which presents a high potential for fecal contamination or other disease causing organisms to enter the distribution system.  The presence of fecal coliforms or E. coli is considered an acute public health problem which may pose an acute risk to human health.

56.     In 2009 and again in 2010, EPA issued to the Defendants emergency administrative orders pursuant to Section 1431 of the SDWA to abate potential health risks associated with Drinking Water System failures.

57.     Defendants did not comply with the 2009 and 2010 emergency administrative orders and the drinking water failures and violations persisted.

58.     As a result, on March 7, 2011, the Defendants and EPA entered into an Administrative Compliance Order on Consent and amended emergency order pursuant to Section 1434 of the CWA to, among other things, address ongoing SDWA violations and correct deficiencies in the Defendants' drinking water system.

59.     The SDWA provisions of the March 2011 AOC required the Defendants to, among other things, submit to EPA an Operations and Maintenance Plan and an Asset Management Plan to ensure the long-term viability of utilities operations; and to retain a certified drinking water operator to operate the drinking water system.

60.     After the March 2011 AOC became effective, additional drinking water pressure losses occurred in March, June and August, 2012 and in January 2013.  The Defendants regularly failed to notify EPA within 24 hours and did not provide timely notice to residents, as required by SDWA regulations.

61.     Since the March 2011 AOC became effective, EPA has issued seven Notices of Violation to the Tribe for compliance failures concerning the Drinking Water System operations, including: failure to submit a drinking water system Operation and Maintenance Plan, failure to provide timely notice to the public and to EPA of significant pressure losses and water outages, failure to submit an Asset Management Plan for operation of the Drinking Water System, failure to retain a certified drinking water operator, and failure to perform required sampling and reporting of the Drinking Water System, all of which are violations of the March 2011 AOC.

62.     In December 2012, the Defendants informed EPA that they were without the services of a qualified drinking water operator, in violation of the March 2011 AOC.  Upon information and believe, the Defendants failed to retain a certified operator for the Drinking Water System from December 14, 2012 until March 2013.

63.     On January 28, 2013, the Defendants informed EPA of system-wide pressure loss due to multiple line breaks and leaks.  The Defendants issued a boil water advisory to customers, which was in effect from January 2013 until April 2013, which is evidence of non-compliance with the March 2011 AOC.

13

64.     On January 30, 2013, the Defendants reported computer control failures within the Drinking Water System, which required manual operation of supply wells.  Upon information and belief, due to the lack of a qualified operator, wells were not operated at proper times, storage tanks were allowed to run dry, and multiple, additional system-wide pressure losses occurred.  Failure to have a qualified operator is a violation of the March 2011 AOC.

65.     Upon information and belief, on approximately March 15, 2013, the Defendants experienced a blockage in the gaseous chlorine delivery system, which resulted in a reduction or complete absence of disinfectant in the drinking water delivery system for a period of approximately one week.  Information concerning this Drinking Water System failure was not reported to EPA in a comprehensive or timely manner, which is a violation of the March 2011 AOC.  EPA was not informed until March 28, 2013.

***Wastewater Treatment Facility***

66.     Defendants operate their WWTF under the authority of an NPDES Permit No. NE0061263 issued by EPA on August 1, 2006 and renewed by EPA on October 29, 2012.

67.     Since 2009, Defendants have violated NPDES Permit No. NE0061263 by: (a) discharging at a location not authorized by Defendants' NPDES Permit; (b) failing to ensure the integrity of the components of the treatment system; (c) failing to operate and maintain all facilities and systems of treatment to achieve compliance with the conditions of the permit; (d) failing to report to EPA within 24 hours from discovery any noncompliance that may endanger the health or the environment; and (e) allowing raw sewage to backup into homes.

68.     Section C (Specific Effluent Limitations and Self-Monitoring Requirements) of Defendants' NPDES Permit No. NE0061263 requires Defendants to submit discharge

monitoring reports ("DMRs") to EPA on a quarterly basis, including flow data and sample results for effluent quality and for influent.

69.     Since at least April 2007 until April 2013, Defendants failed to submit to EPA DMRs with all required information as required by NPDES Permit No. NE0061263.

70.     The CWA provisions of the March 2011 AOC required, among other things, the Defendants to comply with their NPDES permit, including submittal of DMRs to EPA and installation of a back-up generator at the lift station.

71.     Since the March 2011 AOC became effective, EPA has issued two Notices of Violation to the Defendants for failure to comply with the WWTF provisions of the AOC, including: failure to install a back-up generator at lift station, and failure to perform required DMR sampling and reporting of the wastewater system.

72.     Upon information and belief, sometime between May 2012 and March 2013, a WWTF lift station failure resulted in the discharge of raw sewage onto the ground near the lift station in Macy, Nebraska, in violation of the March 2011 AOC.

73.     Untreated sewage leaks, spills or overflows from Defendants' WWTF lift station, sewage pipes, manholes, or other components may flow into public streams and rivers, onto the ground or into buildings where people may come into contact with it.

74.     Infection with organisms contained in untreated sewage can cause a number of adverse health effects ranging from minor illnesses to life-threatening ailments.

75.     Defendants' violations of NPDES Permit No. NE0061263 are violations of Sections 301(a) and 402 of the CWA, 33 U.S.C. § 1311(a) and 1342, which, in turn, are violations of the March 2011 AOC.

15

*Recycling Facility*

76.    Since at least March 16, 2010, when EPA inspected the Defendants' Recycling Facility, the Defendants have accumulated waste, and allowed waste to accumulate, at the Recycling Facility.

77.    During the March 16, 2010 inspection EPA observed numerous types of waste, including, but not limited to, household hazardous waste, medical waste, televisions, computers, used oil, propane and oxygen tanks, tires, scrap metal, appliances, construction debris, furniture, dead animals, and an empty gasoline container.  At the time of the inspection, waste had accumulated in piles up to ten feet in height, extending over several thousand square feet of the Recycling Facility grounds.

78.    Accumulation of residential wastes, animal carcasses, and tire piles promotes the proliferation of rodents, flies and mosquitoes.  Accumulation of propane, gasoline containers, oil, and other combustible materials presents the risk of fire.

79.    Upon information and belief, the proliferation of open dumping on the Omaha reservation is due, in part, to the irregular and/or inadequate trash collection service provided by the Defendants, Defendants' failure to transport waste to an appropriate permitted landfill for proper disposal, and Defendants' failure to pay the landfill tipping fees required for disposing of waste at an appropriate permitted landfill.

80.    During the March 16, 2010 inspection it was also determined that open burning of waste and equipment had occurred at the Recycling Facility with uncontrolled emissions of the combustion products.  During the March 16, 2010 inspection EPA observed two waste hauling vehicles and two dumpsters that had been burned in addition to piles of accumulated trash that had been burned.

16

81.     In June 2010, EPA determined that the Recycling Facility constituted an open dump and that the storage, transfer, or disposal of solid waste at the Recycling Facility presented an imminent and substantial endangerment to human health or the environment.  To address the Recycling Facility open dump, EPA incorporated a RCRA 7003(a), 42 U.S.C. § 6973(a) Administrative Order into the comprehensive March 2011 AOC.

82.     The RCRA provisions of the March 2011 AOC required, among other things, the Defendants to submit to EPA a "Removal and Disposal Plan for Residual Wastes" at the Recycling Facility and implement the plan after approval by EPA.

83.     Since the March 2011 AOC became effective, EPA has issued two Notices of Violation to the Tribe for failure to comply with the terms of the AOC concerning solid waste operations, including: failure to submit to EPA a Removal and Disposal Plan for Residual Wastes, and failure to complete the cleanup of solid wastes at the Recycling Facility.

**FIRST CLAIM FOR RELIEF**
**(Violation of March 2011 Administrative Order on Consent - SDWA)**

84.     The allegations of Paragraphs 1 – 83 above are re-alleged and incorporated herein by reference.

85.     On numerous occasions Defendants failed to comply with the SDWA provisions of the March 2011 AOC issued to them and are subject to claims for injunctive relief requirements and civil penalties under the SDWA.

86.     Unless restrained by an order of the Court, these and similar violations are likely to continue.

87.     As provided in Section 1431(b) of the SDWA, 42 U.S.C. § 300i(b), violations of the March 2011 AOC provisions related to the Drinking Water System, as set forth above, subject Defendants to injunctive relief and civil penalties of up to $16,500 per day for each

violation of the Administrative Order on Consent occurring on or after January 13, 2009,
pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461
note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61
Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R.
Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008); 74 Fed. Reg. 626-01 (Jan. 7, 2009).

## SECOND CLAIM FOR RELIEF
### (Violation of March 2011 Administrative Order on Consent - CWA)

88.     The allegations of Paragraphs 1 – 83 above are re-alleged and incorporated herein
by reference.

89.     On numerous occasions Defendants failed to comply with the CWA provisions of
the March 2011 AOC issued to them and are subject to claims for injunctive relief requirements
and civil penalties under the CWA.

90.     Unless restrained by an order of the Court, these and similar violations are likely
to continue.

91.     As provided in Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d),
violations of the March 2011 AOC provisions related to the Wastewater Facility, as set forth
above, subject Defendants to injunctive relief and civil penalties of up to $37,500 per day for
each violation of the Administrative Order on Consent occurring on or after January 13, 2009,
pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461
note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61
Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R.
Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008); 74 Fed. Reg. 626-01 (Jan. 7, 2009).

## THIRD CLAIM FOR RELIEF
### (Violation of March 2011 Administrative Order on Consent - RCRA)

92.     The allegations of Paragraphs 1 – 83 above are re-alleged and incorporated herein by reference.

93.     On numerous occasions Defendants failed to comply with the RCRA provisions of the March 2011 AOC issued to them and are subject to claims for injunctive relief requirements and civil penalties under RCRA.

94.     Unless restrained by an order of the Court, these and similar violations are likely to continue.

95.     As provided in Section 7003(b) of RCRA, 42 U.S.C. § 6973(b), the violations of the March 2011 AOC provisions related to the Mother Earth Recycling Center, as set forth above, subject Defendants to injunctive relief and civil penalties of up to $7,500 per day for each violation of the Administrative Order on Consent occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at 40 C.F.R. Part 19; 73 Fed. Reg. 75340-75346 (Dec. 11, 2008); 74 Fed. Reg. 626-01 (Jan. 7, 2009).


## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that this Court grant the following relief:

1.     Order Defendants to comply immediately with the statutory and regulatory requirements cited in this Complaint.

2.      Order Defendants to remedy past violations by, among other things, requiring

Defendants to operate the Tribal Utilities pursuant to the requirements of the CWA, RCRA, and

SDWA.

3.      Order Defendants to take all steps necessary to achieve, demonstrate, and

maintain, compliance with the CWA, RCRA, and SDWA and applicable requirements

established thereunder at the Tribal Utilities.

4.      Assess civil penalties against Defendants for each of the violations alleged herein.

5.      Order the Defendants to undertake any remedy that protection of the public health

may require.

6.      Award the United States its costs and disbursements in this action.

7.      Grant such other and further relief as this Court deems appropriate.


Respectfully Submitted,

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


Dated: August 28, 2014                   /s/ Thomas A. Mariani, Jr.[1]
                                         THOMAS A. MARIANI, JR., NY Bar No. 2003374
                                         Deputy Section Chief
                                         Environmental Enforcement Section
                                         Environment and Natural Resources Division
                                         U.S. Department of Justice
                                         Post Office Box 7611
                                         Washington, D.C.  20044-7611

---

[1] Please note that Thomas A. Mariani, Deputy Section Chief, does not want to receive ECF notifications.

  /s/ Cynthia M. Ferguson             
CYNTHIA M. FERGUSON, MD Bar No. N/A
Senior Litigator
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D Street NW
Washington, DC 20004
Telephone: (202) 616-6560
Facsimile: (202) 514-8865
E-mail: Cynthia.Ferguson@usdoj.gov


DEBORAH R. GILG
United States Attorney


Dated: August 28, 2014          By:  s/ Laurie A. Kelly           
LAURIE A. KELLY, MA Bar No. 557575
Assistant United States Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Telephone: 402-661-3700
Fax: 402-661-3081
Email:  laurie.kelly@usdoj.gov