*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

CYNTHIA M. FERGUSON, Senior Litigator
U.S. Department of Justice
Environmental Enforcement Section
Environment and Natural Resources Division
601 D Street, NW
Washington, DC 20004
Telephone:  (202) 616-6560
Facsimile: (202) 514-8865
Cynthia.Ferguson@usdoj.gov

Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CONSENT DECREE** |
| Plaintiff, | |
| v. | Civil Action No: 8:14-cv-255 |
| OMAHA TRIBE OF NEBRASKA AND OMAHA TRIBAL UTILITY COMMISSION | Judge John M. Gerrard |
| Defendants. | |

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

## TABLE OF CONTENTS

I.      JURISDICTION AND PARTIES BOUND ................................................................. 4

II.     OBJECTIVE ............................................................................................................... 7

III.    DEFINITIONS ............................................................................................................ 8

IV.     CIVIL PENALTY ..................................................................................................... 11

V.      INJUNCTIVE RELIEF ............................................................................................. 12

VI.     COMPLIANCE MONITORING, REPORTING AND RECORD KEEPING ............... 22

        Quarterly Reports ..........................................................................................................21

        Record Keeping ............................................................................................................22

        Final Document Disposition ..........................................................................................22

VII.    NON-COMPLIANCE WITH CONSENT DECREE ..................................................... 23

VIII.   STIPULATED PENALTIES ..................................................................................... 27

IX.     RIGHT OF ENTRY .................................................................................................. 30

X.      FORCE MAJEURE ................................................................................................... 31

XI.     DISPUTE RESOLUTION ......................................................................................... 32

XII.    NOTIFICATION ....................................................................................................... 33

XIII.   GENERAL PROVISIONS ......................................................................................... 35

        Certification ................................................................................................................35

        Effect of Settlement/Reservation of Rights ....................................................................35

        Fees ..............................................................................................................................38

        Effective Date ...............................................................................................................38

        Integration and Modifications .......................................................................................38

        Termination ..................................................................................................................39

        Retention of Jurisdiction ...............................................................................................41

        Public Comment ...........................................................................................................41

        Final Judgment .............................................................................................................42

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

WHEREAS, the Omaha Tribe of Nebraska ("OTN" or "Tribe") is a federally recognized Indian tribe located on a federal reservation lying along the Missouri River, with sections in both Nebraska and Iowa;

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed a Complaint concurrently with this Consent Decree alleging that Defendants Omaha Tribe of Nebraska and Omaha Tribal Utility Commission  (collectively the "Defendants") violated the National Primary Drinking Water Regulations ("NPDWR "), 40 C.F.R. Part 141, and Section 1431 of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300i, at the Macy Public Water Supply System ("Drinking Water System"); violated Sections 301 and 402 of the Clean Water Act ("CWA"), 42 U.S.C. 33 U.S.C. §§ 1311 and 1342, at the Macy Public Wastewater Treatment Facility ("Wastewater Facility"); and violated Section 7003 of the Solid Waste Disposal Act, as amended by and hereafter referred to as the Resource Conservation and Recovery Act ("RCRA"), and subsequent amendments, 42 U.S.C. § 6973, at the Mother Earth Recycling Center ("Recycling Facility").  The Macy Public Water Supply System, the Macy Public Wastewater Treatment Facility, and the Mother Earth Recycling Center (collectively the "Tribal Utilities") are owned and/or operated by the Tribe and the Omaha Tribal Utility Commission within the exterior boundaries of the Omaha Tribe of Nebraska Indian Reservation in Macy, Nebraska ("Omaha Tribe Reservation");

WHEREAS, the United States alleges that the Defendants failed to comply with the requirements of an Administrative Order on Consent entered into by the Tribe and EPA on March 7, 2011 ("March 2011 AOC").  The March 2011 AOC required the Defendants to

1

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

perform corrective measures to protect the environment and the health of people living, working, or traveling to Macy, Nebraska.  The Defendants' violations of the March 2011 AOC are specified in the Complaint;

WHEREAS, the United States alleges that the Defendants have an extensive history of breakdowns and noncompliance with the SDWA and its implementing regulations, the NPDWR set forth at 40 C.F.R. Part 141, at the Macy Public Water Supply System and have been issued four "imminent and substantial endangerment" administrative orders since January 2010.  In addition, EPA has provided compliance assistance to Defendants on numerous occasions to ensure safe drinking water from its Drinking Water System;

WHEREAS, the United States alleges that the Defendants have a history of noncompliance with the CWA and its implementing regulations at the Macy Public Wastewater Treatment Facility and have been issued two administrative orders since February 2009.  In addition, EPA has provided compliance assistance to Defendants on numerous occasions since 2008 to ensure safe wastewater operations from its Wastewater Facility;

WHEREAS, the United States alleges that the Defendants have a history of solid waste management problems at the Mother Earth Recycling Center and agreed to include a RCRA Section 7003 "imminent and substantial endangerment" administrative order in the March 2011 AOC to ensure safe management of solid waste at the Recycling Facility and throughout the Omaha Tribe Reservation.  Defendants have also been offered compliance assistance on numerous occasions by EPA, the Indian Health Service (IHS) agency within the U.S.

2

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

Department of Health and Human Services, and the U.S. Department of Agriculture to help

address its solid waste management issues;

WHEREAS, EPA has worked with the Tribe, and will continue to work with the Tribe as

appropriate, pursuant to EPA's Indian Policies concerning consultation with tribal governments

and enforcement against tribal facilities. EPA has provided, and will continue to provide as

appropriate, compliance assistance to the Tribe in its capacity as a regulatory agency in ensuring

compliance with applicable federal law;

WHEREAS, this Consent Decree does not constitute an admission of either any facts or

liability by the Defendants;

WHEREAS, the Defendants agree that performance of the injunctive relief and

compliance reporting and record keeping set forth in this Consent Decree is in the best interest of

the Tribe and the consumers of the Tribal Utilities;

WHEREAS, the United States has reviewed the Financial Information submitted by the

Defendants to determine whether the Defendants are financially able to pay a civil penalty.

Based upon this Financial Information the United States has determined that the Defendants have

limited financial ability to pay a civil penalty;

WHEREAS, the Macy Public Water Supply System is an aging, small rural water system

that faces the same challenges as many aging, small rural water systems in the United States.

WHEREAS, a review of financial documents provided by the Tribe to the United States

demonstrates a significant shortfall between the revenue generated by utilities ratepayers and the

expenses required to operate and maintain the utilities.

3

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

WHEREAS, the Tribe now substantially subsidizes the operation of the Tribal Utilities through its own treasury, and the Tribe has historically contributed financially to the Utilities Commission to supplement the shortfall between utilities revenue and expenses; until utilities revenue equals or exceeds expenses, it will likely be necessary for the Tribe to continue supplementing utilities revenue to continue utilities operation and maintenance.

WHEREAS, the parties have agreed that settlement of the civil judicial claims as alleged in the Complaint is in the public interest and that entry of this Consent Decree without further litigation is the most appropriate way to resolve this action.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED as follows:

## I.   JURISDICTION AND PARTIES BOUND

1.      This Court has jurisdiction over this action under Sections 1414 and 1431 of the SDWA, 42 U.S.C. §§ 300g-3 and 300i; Section 309 of the CWA, 42 U.S.C. §1319; Section 7003 of RCRA, 42 U.S.C. §6973; and 28 U.S.C. §§ 1331, 1345, and 1355.  The Defendants consent to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter, enforce, modify, or terminate this Consent Decree.

2.      Venue is proper in the District of Nebraska pursuant to Sections 1414(b) and 1431(b) of the SDWA, 42 U.S.C. §§ 300g-3(b) and 300i(b); Section 7003(b) of the RCRA, 42 U.S.C. § 6973(b); Section 309(b) and (d) of the CWA, 42 U.S.C. § 1319(b) and (d); and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations alleged in the Complaint occurred in this

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

district, the Defendants conduct business in this district, and the Defendants are located in this

district.

3.     The Omaha Tribe of Nebraska is a federally recognized tribe governed by the

Omaha Tribal Council ("Council") consisting of a Chairman, Vice Chairman, Secretary,

Treasurer, and three additional Council members.

4.     The Omaha Tribal Utility Commission ("OTUC") is an entity chartered under the

laws of the Omaha Tribe to take on the responsibility for providing solid waste disposal, drinking

water and wastewater treatment services to the Macy, Nebraska community and other reservation

communities located within the exterior boundaries of the Omaha Tribe Reservation.  The

Council adopted bylaws and rules and regulations to govern the OTUC.

5.     The obligations of Defendants under this Consent Decree, including obligations to

pay amounts due under this Consent Decree and perform the injunctive relief requirements of

this Consent Decree, are joint and several.  In the event of the failure of any one of the

Defendants to meet the obligations under this Consent Decree, the remaining Defendant shall be

responsible for such obligations.

6.     Defendants own and operate the Drinking Water System on the Omaha Tribe

Reservation for the provision to the public of piped water for human consumption.  The system

supplies water from a 3-well field to approximately 1,800 users within the exterior boundaries of

the Omaha Tribe Reservation and in the town of Macy, Nebraska through approximately 360

service connections.

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

7.      Defendants own and operate the Wastewater Facility for the town of Macy, Nebraska.  The facility treats domestic wastewater from a population of approximately 1,000 people and primarily consists of several miles of sewer lines, a lift station, and a three-cell wastewater lagoon treatment system that periodically discharges treated effluent to Blackbird Creek through Outfall 001.

8.      Defendants own and operate a facility known as the Mother Earth Recycling Center near Macy, Nebraska, in Thurston County, Nebraska, on land located within the exterior boundaries of the Omaha Tribe Reservation.  The Recycling Facility includes a metal sided building, approximately 70 feet by 36 feet, which is used to house and operate equipment to recycle cardboard, plastics, and other recyclable materials.  The building is located within an area of approximately two acres that was fenced in April 2011.  The area surrounding the Recycling Facility is primarily farmland, in the alluvial floodplain of the Missouri River, which flows approximately 1.2 miles north-east of the Recycling Facility.

9.      This Consent Decree shall apply to and be binding upon the United States and the Defendants and any successor tribal leaders; administrations; executive committees; utility managers, directors, and operators; utility commissions; utility commission boards; Councils and/or individual chairpersons acting on behalf of the Omaha Tribe of Nebraska, and any other person or entity acting on behalf of the Defendants.

10.      The Defendants shall provide a copy of this Consent Decree to all officers, directors, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any person or entity retained to perform work

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

required under this Consent Decree. The Defendants shall ensure that any contract entered into

to perform work required under this Consent Decree conforms to its terms and conditions.

11.     In any action to enforce this Consent Decree, the Defendants shall not raise as a

defense the failure by any of its members, officers, directors, employees, agents, or contractors to

take any actions necessary to comply with the provisions of this Consent Decree.

12.     Any transfer of ownership or operation of the Tribal Utilities to any other person

or entity must be conditioned upon the transferee's agreement to undertake the obligations

required by this Consent Decree, as provided in a written agreement between the Defendants and

the proposed transferee, enforceable by the United States as third-party beneficiary of such

agreement. The Defendants shall give notice of this Consent Decree to any subsequent owner or

operator prior to such transfer. The Defendants shall provide a copy of such notice together with

a copy of the proposed written agreement to those persons identified in Section XII

(Notification) sixty (60) days prior to such transfer of ownership or operational responsibilities.

13.     If the Defendants transfer or relinquish the right or duty to operate any of the

Tribal Utilities during the effective period of this Consent Decree, the Consent Decree shall

continue to be binding upon the Defendants as owner of the Tribal Utilities until the Consent

Decree is terminated.

## II.     OBJECTIVE

14.     It is the express goal of the parties in entering into this Consent Decree to have the

Defendants achieve and maintain continuous, sustainable, and long-term compliance with the

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree
SDWA, CWA, and RCRA in the operation of their Tribal Utilities.  All obligations under this

Consent Decree shall be interpreted in a manner consistent with this goal.

### III.    DEFINITIONS

15.    Terms used in this Consent Decree that are defined in the SDWA, CWA, or

RCRA, or in regulations promulgated pursuant to those Acts, shall have the meanings assigned

to them in those Acts or such regulations, unless otherwise provided in this Consent Decree.

Whenever the terms set forth below are used in this Consent Decree, the following definitions

shall apply:

"Board" shall mean the Omaha Tribal Utility Commission Board of Commissioners;

"Complaint" shall mean the complaint filed by the United States in this action;

"Commission" or "OTUC" shall mean the Omaha Tribal Utility Commission chartered

under the laws of the Omaha Tribe to take on the responsibility for providing solid waste

disposal, drinking water and wastewater treatment services to the communities located within the

exterior boundaries of the Omaha Tribe Reservation;

"Consent Decree" or "Decree" shall mean this Consent Decree and the following

appendices attached hereto: Appendix A (Financial Information), Appendix B (Utilities

Operating Plan – Budget Requirements), Appendix C (Utilities Operating Plan – Asset

Management Plan Requirements), Appendix D (Quarterly Report Contents), Appendix E

(Operating Contractor General Requirements), Appendix F (Criteria to Demonstrate Technical,

Managerial, and Financial Capacity of the Drinking Water System), and Appendix G (Omaha

Tribal Council Resolution Authorizing the Chairman to Sign Consent Decree);

8

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

"Council" shall mean the elected leadership of the OTN comprising the Omaha Tribe of Nebraska Tribal Council;

"CWA" or "Clean Water Act" shall mean the federal Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and its implementing regulations;

"Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day;

"DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States;

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

"Financial Information" shall mean those financial documents identified in Appendix A;

"Force Majeure" shall have the meaning as defined in Paragraph 61.

"Macy Public Water Supply System" or "Drinking Water System" shall mean the public water system in Macy, Nebraska, within the exterior boundaries of the Omaha Tribe Reservation, EPA Identification Number 070000007;

"Macy Public Wastewater Treatment Facility" or "Wastewater Facility" shall mean the wastewater treatment facility located in Macy, Nebraska, owned and operated by the Defendants subject to National Pollution Discharge Elimination System ("NPDES") Permit No. NE-0061263 during all relevant times related to this Consent Decree;

9

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

"Mother Earth Recycling Center" or "Recycling Facility" shall mean the recycling center located on the Omaha Tribe Reservation encompassing approximately two acres adjacent and north of BIA Road 5 (also designated as L Avenue), approximately 1.75 miles by road east-north-east of Macy, Nebraska;

"NPDWR" shall mean the National Primary Drinking Water Regulations, 40 C.F.R. Part 141;

"OTN" or "Tribe" shall mean the Defendant Omaha Tribe of Nebraska which is a federally recognized Indian tribe;

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral;

"Parties" shall mean the United States, the OTN, and the Commission;

"Public Water System" means a system that provides piped drinking water for human consumption to persons within the meaning of Section 1401(4) of the SDWA, 42 U.S.C. § 300f(4), and 40 C.F.R. § 141.2.

"RCRA" shall mean the federal Solid Waste Disposal Act (as amended by and also known as the Resource Conservation and Recovery Act) 42 U.S.C. § 6901, *et seq.*, and its implementing regulations;

"SDWA" shall mean the federal Public Health Service Act (also known as the "Safe Drinking Water Act"), 42 U.S.C. § 300f *et seq.*, and its implementing regulations;

"Section" shall mean a portion of this Consent Decree identified by a roman numeral;

"United States" shall mean the Plaintiff United States of America, acting on behalf of EPA;

10

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

"Utilities Director" shall mean the person designated by the Tribal Council or OTUC as being responsible for operation of the utilities programs, including drinking water, wastewater, and solid waste management activities.  The Utilities Director also directs staff personnel responsible for utilities operations;

"Utilities Operator(s)" shall mean the drinking water and wastewater operator(s) licensed at the appropriate level by the State of Nebraska under 179 NAC 10.

### IV.   CIVIL PENALTY

16.     In satisfaction of the United States' civil claims specifically alleged in the Complaint for the Defendants' violations of the SDWA, CWA, RCRA, and the March 2011 AOC, as of the date of lodging this Consent Decree, the Defendants shall pay to the United States a civil penalty of $2,000 within thirty (30) Days of the entry of this Consent Decree.

17.     Defendants shall pay the civil penalty due to the United States by certified or cashier's check in the amount due, payable to the "U.S. Department of Justice," referencing the civil action number of this case and DOJ Case No.  90-5-1-1-10496, and delivered to the Financial Litigation Unit of the United States Attorney for the District of Nebraska, District of Nebraska, Financial Litigation Unit, attention: Cassie, 1620 Dodge Street, Suite 1400, Omaha, Nebraska 68102.  The payment shall be made in accordance with instructions provided to Defendants by the Financial Litigation Unit of the Office of the United States Attorney for the District of Nebraska.  At the time of payment, Defendants shall also send a copy of the check together with a transmittal letter to those persons identified in Section XII (Notification) of this Consent Decree.  That transmittal letter shall state that the payment is for the civil penalty owed

11

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

pursuant to the Consent Decree in *United States v. Omaha Tribe of Nebraska, et al.*, and shall

reference the civil action number of this case and DOJ Case No. 90-5-1-1-10496.

## V.   INJUNCTIVE RELIEF

18.   <u>Reserve Account</u>.  By the Effective Date, Defendants shall establish an interest-

bearing account (the "Reserve Account" or "Account"), in the initial amount of $22,500, to

ensure funding for Tribal Utilities capital improvements or emergency situations only.  By seven

(7) months after the Effective Date, Defendants shall fund the Reserve Account at a minimum of

$75,000.  By seventeen (17) months after the Effective Date and thereafter, Defendants shall

fully fund the Reserve Account at a minimum of $100,000.  For withdrawals made from the

Reserve Account, Defendants shall replenish the Account at $22,500 on a quarterly basis until

the Account is fully funded at $100,000.  It shall not be a violation of this Paragraph if qualified

withdrawals are made within seventeen (17) months of the Effective Date and as a result the

Account is not fully funded, as long as the Defendants are replenishing the Account at $22,500

on a quarterly basis.  By October 31st of each year, Defendants shall provide a report to EPA

describing all Reserve Account activity for the previous year, including the purpose for each

withdrawal.

19.   <u>Certified Drinking Water and Wastewater Operators</u>.  Defendants must retain at

least two (2) people certified as drinking water operators and two (2) people certified as

wastewater operators at all times as follows:

a.   The Defendants' Utilities Operator shall be certified as a licensed drinking

water operator by the state of Nebraska per 179 NAC 10, at Grade III or

higher.  If EPA determines that the Public Water System serves a population

12

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

greater than 2,000, the Defendants' Utilities Operator shall be certified as a licensed drinking water operator by the state of Nebraska per 179 NAC 10, at Grade II or higher.  The Utilities Operator shall also be certified as a wastewater operator by the state of Nebraska per 197 NAC, at Grade L or higher.  If the Utilities Operator's employment terminates for any reason, the Defendants shall have thirty (30) days from the date of termination to retain a new Utilities Operator meeting the above outlined certification criteria.

b.  Within one (1) year of the Effective Date of this Decree,  another member of the Defendants' Utilities staff shall also be certified as a licensed drinking water operator by the state of Nebraska per 179 NAC 10, at Grade IV or higher.  A staff member shall also be certified as a wastewater operator by the state of Nebraska per 197 NAC, at Grade L or higher.  If the Utilities' staff member's employment terminates for any reason, the OTN shall have thirty (30) days from the date of termination to train or retain a Utilities staff member meeting the above outlined certification criteria.

c.  Within six (6) months of the Effective Date of this Consent Decree, the current Utilities Director shall attend training required for certification as a licensed drinking water operator by the state of Nebraska per 179 NAC 10, at Grade IV or higher and shall also attend training required for certification as a wastewater operator by the state of Nebraska per 197 NAC, at Grade L or higher, but need not be certified as a drinking water or wastewater operator. The Director must also complete State of Nebraska Continuing Education

13

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

requirements that would be required to maintain licensure as a drinking water or wastewater operator, but need not attain licensure status.  If the Utilities Director's employment terminates for any reason, the Defendants shall have sixty (60) days from the date of termination to retain a new Utilities Director.  All future Utilities Directors shall attend training as described herein within six (6) months of being hired.

20.     <u>Training for Chairman of the Omaha Tribal Utility Commission</u>.  Within six (6) months of the Effective Date of this Decree or within six (6) months of being appointed to the Board, whichever is later, the Chairman of the Board shall complete State of Nebraska drinking water operator training at Grade IV or higher and must complete State of Nebraska wastewater operator training at Grade L or higher, but need not be certified as a drinking water or wastewater operator.  The Chairman of the Board must also complete State of Nebraska Continuing Education requirements that would be required to maintain licensure as a drinking water or wastewater operator, but need not attain licensure status.  All future Chairmen of the Board shall attend training as described herein within six (6) months of being hired.

21.     <u>Utilities Operating Plan</u>. The Defendants shall develop and implement a Utilities Operating Plan.  The Utilities Operating Plan shall include, at a minimum, a budget for each of the utilities, a defined rate structure for each of the utilities, job descriptions and associated qualifications for all personnel employed in the utilities program, and an asset management plan.  The budget and asset management plan shall be developed in accordance with Appendices B and C of this Consent Decree.  On or before June 1, 2015, Defendants shall submit to EPA for review and approval the budget portion of the Utilities Operating Plan for the coming fiscal year which

14

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

begins on October 1st. The remainder of the first Utilities Operating Plan shall be submitted to

EPA for review and approval within 18 months of the Effective Date of this Consent Decree.

Defendants shall submit subsequent Utilities Operating Plans to EPA by June 1st of each year for

a period of three (3) years from the date the first report is submitted.

22.    Budget Approval.  The annual budgets for the coming fiscal year for each utilities

system included in the Utilities Operating Plan shall be developed consistent with the EPA

approved Utilities Operating Plan for the coming fiscal year and submitted for Council approval

before the end of the Tribe's fiscal year on September 30th.  On or before August 31st each year,

the Council shall annually approve a utility operation and maintenance budget for the coming

fiscal year that is consistent with the EPA approved Utilities Operating Plan.  The Council shall

ensure provision of adequate funding to operate and maintain the Tribal Utilities in full

compliance with all applicable federal environmental laws, based on information outlined in the

Utilities Operating Plan.

23.    Customer Database.  Within three (3) months of the Effective Date of this

Consent Decree, the Defendants shall develop and maintain a database describing all Macy

utility customers, including name and address.  The Defendants shall submit a copy of the

database to EPA upon completion and annually for a period of three years from the Effective

Date of this Consent Decree.

24.    Document Management System. Within six (6) months of the Effective Date of

this Consent Decree, the Defendants shall develop, implement, and maintain a system to manage,

track, and retain all documents related to the management and operation of the utilities.

15

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

     25.    <u>Operations and Maintenance Plans</u>. The Defendants shall develop and implement Operations and Maintenance (O&M) Plans for the drinking water, wastewater, and solid waste utilities.  The Drinking Water O&M Plan shall be submitted to EPA for review and approval within six (6) months of the Effective Date of this Consent Decree.  The Wastewater and Solid Waste O&M Plans shall be submitted to EPA for review and approval within one year of the Effective Date of this Consent Decree.

       a.   The Drinking Water O&M Plan shall be based on guidance found at http://www.gaepd.org/Files_PDF/techguide/wpb/o&m.pdf.

       b.   The Wastewater O&M Plan shall incorporate all relevant operational and maintenance requirements of the Tribe's NPDES Permit No. NE-0061263, including at a minimum, monitoring/reporting requirements in Section C and Section D (Supplemental Conditions) and the requirements in subsections 1 (Facility Maintenance) and 2 (Calibration of Lift Station Equipment).

       c.   The Solid Waste O&M Plan shall describe regular weekly residential and commercial waste collections, direct hauling of solid waste to a permitted RCRA Subtitle D (solid waste) landfill, monthly scheduled pickup of white goods and large items, monthly collection and disposal of household hazardous wastes, regular maintenance of collection vehicles, maintaining solid waste operators with a commercial driver's license, and maintaining appropriate vehicle insurance at all times.

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree
### Solid Waste

26.     Within four (4) months of the Effective Date of this Consent Decree, the Defendants shall remove and dispose of all remaining waste at the Recycling Facility in accordance with all applicable laws.

27.     The Defendants shall hire a qualified contractor to develop and implement a sampling analysis plan to characterize the nature and extent of any soil contamination at the Mother Earth Recycling Center.  Within six (6) months of the Effective Date of this Consent Decree, the Defendants shall submit the sampling analysis plan, including a schedule for implementation of the plan, to EPA for review and approval.  Within thirty (30) Days of EPA's approval of the sampling analysis plan in accordance with Paragraph 38, the Defendants shall implement the plan in accordance with the approved schedule.  The Defendants shall submit the results of the sampling and analysis to EPA for review and approval within thirty (30) Days of completion of the sampling and analysis.  Pursuant to the results of the sampling analysis, the Defendants shall develop a remediation plan for all contaminated areas based upon the analytical results.  Within six months of EPA's approval of the sampling and analysis results in accordance with Paragraph 38, the Defendants shall submit the remediation plan, including a schedule for completion, to EPA for review and approval.

28.     The Defendants shall, as necessary, enact and enforce ordinances to prohibit dumping of solid and/or hazardous waste at unauthorized locations.  The Defendants shall provide quarterly reports to EPA of solid waste enforcement activity in accordance with the reporting requirements in Section VI (Compliance Reporting and Record Keeping) of this Consent Decree.

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

**Wastewater Utility**

29.     The Defendants shall comply with all provisions of Omaha Tribe of Nebraska

NPDES Permit No. NE-0061263, including all monitoring, sampling and reporting requirements.

30.     Within sixty (60) Days of the Effective Date of this Consent Decree, the

Defendants shall replace the lift station and install a backup generator for the lift station.  The

Defendants shall provide a completion report to EPA within ten (10) Days of completion.

31.     The Defendants shall consult with EPA at least two (2) weeks prior to any

planned wastewater discharges.

32.     The Defendants shall ensure integrity of wastewater lagoon berms through

ongoing monitoring and maintenance, including but not limited to, appropriate periodic culling

of rodent population, immediately filling all burrowing holes within lagoon berms, and adequate

mowing of grass.

**Drinking Water Utility**

33.     Immediately upon the Effective Date of this Consent Decree, the Defendants shall

implement the routine SDWA monitoring and reporting provisions as outlined in 40 C.F.R. Part

141.

34.     Within three (3) months of the Effective Date of this Consent Decree, the

Defendants shall prepare and submit to EPA an updated map of the drinking water distribution

system.

35.     Within 18 months of the Effective Date of the Consent Decree, the Defendants

shall install meters and ensure functional operation of meters to measure water consumption at

agricultural and commercial locations.  Within three years of the Effective Date of the Consent

18

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

Decree, the Defendants shall install meters and ensure functional operation of meters to measure water consumption at individual residential locations.

36.     The Defendants shall report to EPA any instances where there is a drop in pressure in the distribution system to less than 20 pounds per square inch ("psi"), and any instances where there are significant line breaks (causing water outages to 5 or more users) within 24 hours of the Defendants' initial awareness of the pressure loss and/or line break.

37.     Within six months of the Effective Date of this Consent Decree, the Defendants shall inspect the two finished water high lift pumps at the Drinking Water Plant and perform any needed repairs.  Within two (2) years of the Effective Date of this Consent Decree, the Defendants shall complete the following activities and submit a completion report to EPA:

  a.  Procure a spare motor to service the finished water high lift pumps at the Drinking Water Plant;

  b.  Install functional flow meters for all water supply wells and for the treated water delivered from the water treatment plant;

  c.  Inspect and perform required maintenance on source well high service pump(s);

  d.  Inspect and perform required maintenance on the Supervisory Control and Data Acquisition System (SCADA);

  e.  Inspect the distribution system to identify illegal connections where backflow/cross-contamination prevention has not been installed and remove identified illegal connections;

19

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

    f.   Inspect and perform required maintenance at the Backwash Water Collection Pond;

    g.  Install permanent back-up generators to supply power to pumps at all water supply wells;

    h.  Install surge protection devices to protect against lightning strikes that may interrupt power to the wells and treatment plant; and

    i.  Provide access to the fuel storage tanks, wells, and the treatment plant during inclement weather.  This could include a contract with a vendor to provide snow clearance, or clear evidence of tribal capacity to provide such access.

38.    **Approval of Deliverables.**

    a.  Defendants shall submit any plan, report, or other item that it is required to be submitted to EPA for review and/or approval pursuant to this Consent Decree in accordance with Section XII (Notification) of this Consent Decree.  After review of any deliverable submitted for approval, EPA will: (i) approve, in whole or part, the submission; (ii) approve the submission upon specific conditions; (iii) modify the submission to cure deficiencies; (iv) disapprove, in whole or part, the submission and provide written comments directing the Defendants to modify the submission; or (v) any combination of (i) through (iv).  However, EPA will not modify a submission without first providing Defendants at least one notice of deficiency and an opportunity to cure the deficiency within ten (10) Days, except where EPA determines that to do so would cause serious disruption to the work or where EPA has disapproved

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

previous submission(s) due to material defects and EPA determines that the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

b.   In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 38a., Defendants shall proceed to take any action required by the deliverable, as approved or modified by EPA subject only to Defendants' right to invoke the Dispute Resolution procedures set forth in Section XI (Dispute Resolution) of this Consent Decree with respect to the modifications or conditions made by EPA.

c.   <u>Resubmission of Disapproved Deliverable</u>. Within thirty (30) Days of receiving EPA's written comments directing Defendants to modify the submittal, Defendants shall either: (i) alter the submission consistent with EPA's written comments and provide the submission to EPA for final approval, or (ii) submit the matter for dispute resolution under Section XI (Dispute Resolution) of this Decree.  Upon receipt of EPA's final approval of the submission, or upon completion of the submission pursuant to dispute resolution, Defendants shall implement the submission in accordance with the schedule set forth in the approved submission or, if a schedule is not included in the submission, the schedule set forth in this Decree.

d.   Once approved by EPA, all deliverables, including schedules contained therein, shall be incorporated into this Consent Decree.

21

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

## VI.   COMPLIANCE MONITORING, REPORTING AND RECORD KEEPING

39.   <u>Quarterly Reports</u>.  Notwithstanding all other applicable federal reporting and record keeping requirements, the Defendants shall submit to EPA quarterly progress reports for the preceding quarter detailing Defendants' progress in implementing the Injunctive Relief requirements set forth in the preceding Section V (Injunctive Relief) including, but not limited to, the items listed in Appendix D of this Consent Decree.  Defendants shall submit the quarterly reports within thirty (30) Days after the end of each quarter (i.e., by April 30, July 30, October 30, and January 30) beginning after lodging of this Consent Decree.  The reports are required until the Consent Decree is terminated pursuant to Paragraph 75, but may, upon written notice from EPA, be changed to semi-annual submissions.

40.   <u>Record Keeping</u>.  Notwithstanding all other applicable federal reporting and record keeping requirements, the Defendants shall generate, and retain, and instruct its contractors and agents to preserve and retain, all non-identical copies of notices, reports, submissions, records and documents (including those in electronic form) that relate in any manner to the Defendants' performance of its obligations under this Consent Decree until the Consent Decree is terminated.  The Defendants shall provide as soon as reasonably possible any of these documents to EPA upon request.

41.   <u>Final Document Disposition</u>.  Notwithstanding all other applicable federal reporting and record keeping requirements, the Defendants shall notify the United States at least thirty (30) Days prior to the destruction of any notices, reports, submissions, records or documents subject to this Section and, upon request by the United States, deliver any such records or documents to EPA.  The Defendants may assert that certain documents, records, or

22

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Defendants assert such a privilege, they shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted.  However, no documents, reports, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged.

### VII.    NON-COMPLIANCE WITH CONSENT DECREE

42.    For failure to comply with the following requirements listed in Paragraphs 42.a through 42.f of this Consent Decree, the United States may, in the exercise of its discretion, require the Defendants to enter into an agreement to outsource operation, maintenance, and management of the Drinking Water System if any one of the following circumstances occurs:

a.  For more than sixty (60) consecutive days the Defendants have not employed a Utilities Operator who is certified as a licensed drinking water operator by the state of Nebraska (per 179 NAC 10) at Grade III or higher;

b.  For more than thirty (30) consecutive days the Defendants have not employed any Utilities Operators who are certified as a licensed drinking water operator by the state of Nebraska (per 179 NAC 10) at Grade IV or higher;

c.  Defendants fail to timely monitor Total Coliform Rule ("TCR") sampling as required by the NPDWR and the Defendants' TCR sampling plan for three (3) consecutive months, or four (4) months in any twelve (12) month period;

23

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

    d.   Boil water advisories for all or part of the Drinking Water System, as determined by EPA, have been in effect for a period longer than three (3) consecutive weeks, unless Defendants have complied with the force majeure notice requirements of Section X (Force Majeure) of this Consent Decree and EPA determines that a force majeure event has occurred as defined in Paragraph 61 and grants an extension in accordance with Paragraph 62;

    e.   Defendants fail to submit an acceptable Utilities Operating Plan or Operation and Maintenance Plan as described in Paragraphs 21 and 25, respectively, according to the deadlines and processes defined therein;

    f.   Material failure by the Defendants to implement the Utilities Operating Plan or Operation and Maintenance Plan required by Paragraphs 21 and 25, respectively.

    43.    If EPA determines that the Defendants are required to enter into an agreement to outsource operation, maintenance, and management of the Drinking Water System, EPA shall notify Defendants in writing (hereinafter referred to as "Outsourcing Notice").  Defendants shall have ninety (90) days from receipt of EPA's Outsourcing Notice to hire a qualified contractor, the selection of which shall be subject to disapproval by EPA.  Within sixty (60) days after receipt of EPA's Outsourcing Notice, Defendants shall notify EPA in writing of the name and qualifications of any contractor Defendants propose to hire and provide EPA with a copy of the proposed contract.  Any contractor selected must meet the qualifications and provide the scope of services in the proposed contract outlined in Appendix E.  EPA will either issue a notice of disapproval or an authorization to proceed regarding hiring of the proposed contractor.

24

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

    a.   If EPA issues a notice to proceed and, at any time thereafter, Defendants propose to change the contractor, Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new contractor is hired, subject to qualifications outlined in Appendix E.

    b.   If EPA disapproves a proposed contractor, EPA will notify Defendants in writing.  Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, subject to the criteria for qualifications outlined in Appendix E, within thirty (30) days after receipt of EPA's disapproval of the contractor previously proposed.  EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Defendants may select any contractor from the list that is not disapproved and shall notify EPA of the name of the contractor selected within twenty-one (21) days after EPA's authorization to proceed.

44.    The duration of Defendants' initial agreement to outsource operation, maintenance, and management of the Drinking Water System shall be a minimum of three years. If Defendants elect to terminate the outsourcing agreement at the conclusion of its term, Defendants shall notify EPA in writing at least sixty (60) days prior to the date Defendants propose to terminate the outsourcing agreement.  The notification shall include supporting documentation sufficient to demonstrate that Defendants have adequate technical, managerial, and financial capacity to operate, maintain, and manage the Drinking Water System, in accordance with the criteria outlined in Appendix F.

25

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

    a.  If EPA determines that Defendants have demonstrated adequate technical, managerial and financial capacity to operate, maintain, and manage the Drinking Water System, EPA shall notify Defendants in writing and Defendants shall resume operation of the system in according with the provisions of the Utilities Operating Plan and Drinking Water O&M Plan.

    b.  If EPA determines that Defendants have not demonstrated adequate technical, managerial and financial capacity to operate, maintain, and manage the Drinking Water System, EPA shall notify Defendants in writing and outsourcing shall continue for a minimum of one additional year in accordance with the provisions outlined in Paragraph 43.  Thereafter, on an annual basis, Defendants may submit to EPA a request to terminate the outsourcing agreement.  The request must be submitted at least sixty (60) days prior to the date Defendants propose to terminate the outsourcing agreement.  With each request Defendants shall include documentation to demonstrate that Defendants have adequate capacity to operate, maintain, and manage the Drinking Water System, as described in this Paragraph 44.  Outsourcing shall remain in place until Defendants receive notification from EPA, in accordance with Paragraph 44.a, that Defendants have demonstrated the capacity necessary to resume operation of the Drinking Water System.

45.    Nothing in this Section shall be construed to limit the United States' ability to seek any remedy, including injunctive relief, civil and/or criminal penalties otherwise provided by law for any violation of this Consent Decree, the SDWA, RCRA, or CWA.

26

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree
## VIII.    STIPULATED PENALTIES

46.    The Defendants shall be liable for stipulated penalties in the amounts set forth below to the United States for failure to comply with the requirements of this Consent Decree, the SDWA, CWA, and RCRA.  "Compliance" by the Defendants shall include full and satisfactory completion of the activities under this Consent Decree.  A violation includes, but is not limited to, failing to perform an obligation in accordance with any approved work plan or time schedule required by this Consent Decree, including the Appendices, or any plan later incorporated into this Consent Decree.

| Violations | Stipulated Penalties Per Day | |
|---|---|---|
| Late Payment of any/all of the Civil Penalty (Paragraph 16) | 1st through 7th day<br>8th through 14th day<br>Each day thereafter | $ 250<br>$ 500<br>$ 800 |
| Failure to comply with the requirements of Section V(Injunctive Relief) | 1st through 7th day<br>8th through 14th day<br>Each day thereafter | $ 250<br>$ 600<br>$1,000 |
| Failure to comply with the requirements of Section VI(Compliance Reporting and Record Keeping) | 1st through 7th day<br>8th through 14th day<br>Each day thereafter | $ 125<br>$ 300<br>$ 500 |
| Failure to comply with the requirements of Section VII(Non-Compliance with Consent Decree) for termination of outsourcing | 1st through 7th day<br>8th through 14th day<br>Each day thereafter | $ 250<br>$ 600<br>$1,000 |

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

47.     All stipulated penalties shall begin to accrue on the first day that performance is delinquent or a violation of this Consent Decree occurs, and continue to accrue through the final day of the completion of the activity or correction of the violation.

48.     Upon entry of this Consent Decree, the stipulated penalty provisions of this Consent Decree shall be enforceable with regard to any and all violations that have occurred between lodging and entry of this Consent Decree.

49.     Stipulated penalties shall become owing upon written demand by EPA and are due on or before the fifteenth (15th) of the month following the month the written demand is received.  The Defendants shall, as directed by the United States, pay stipulated penalties owing to the United States in accordance with this Section, including providing a copy of the payment concurrently to those persons identified in Section XII (Notification).

50.     Defendants shall not use funds from the Reserve Account, established pursuant to Paragraph 18, to pay stipulated penalties.

51.     If the Defendants fail to pay civil or stipulated penalties according to the terms of this Consent Decree, the United States shall be entitled to collect interest on such penalties, as provided for in 28 U.S.C. § 1961.

52.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties, and/or the interest on such penalties, otherwise due under this Consent Decree.

53.     The Defendants shall be liable for stipulated penalties due to the United States unless excused under Paragraph 52 or Section X (Force Majeure).

28

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

54.     Stipulated penalties shall continue to accrue during any Dispute Resolution, with interest on accrued penalties payable and calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

a.  If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, the Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) Days of the effective date of the agreement or the receipt of EPA's decision or order;

b.  If the dispute is appealed to the Court and the United States prevails in whole or in part, the Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in Paragraph 54.c., below;

c.  If any party appeals the District Court's decision, the Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

55.     Nothing in this Section shall be construed to limit the United States' ability to seek any remedy, including injunctive relief, civil and/or criminal penalties otherwise provided by law for any violation of this Consent Decree, the SDWA, RCRA, or the CWA.  Section XI (Dispute Resolution) of this Decree shall be the exclusive mechanism for disputes arising under or with respect to this Section of the Decree.  However, decisions made by the United States pursuant to Paragraph 52 of this Section are unreviewable and therefore not subject to dispute resolution.

29

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

## IX.    RIGHT OF ENTRY

56.    EPA and its contractors, consultants, agents and attorneys shall have the authority until this Consent Decree is terminated to enter any property owned, operated, or served by the Defendants at all times for the purpose of monitoring the progress of activities required under this Consent Decree, including but not limited to:

    a.  verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    b.  obtain samples and, upon request, splits of any samples taken by the Defendants or their representatives, contractors, or consultants;

    c.  obtain documentary evidence, including photographs and similar data; and

    d.  assess the Defendants' compliance with this Consent Decree.

57.    All inspections or visits conducted under this Consent Decree shall be performed in accordance with the inspection and notification protocol set forth in the EPA Region 7 Policy for Environmental Protection in Indian Country.  In the event of an emergency, EPA will notify the Defendants' chairman of the Utilities Commission Board by telephone, leaving a message if no one answers, describing the nature of the emergency and the property requiring immediate access.

58.    Upon request, and where reasonably possible, EPA will split samples, enabling the Defendants to send samples to their own laboratory for confirmation of results.

59.    This provision in no way limits or otherwise affects any right of entry held by EPA pursuant to applicable federal, tribal, or local laws or regulations.

30

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

## X.   FORCE MAJEURE

60.     The Defendants shall satisfy the requirements of Section V(Injunctive Relief)

except to the extent, and for the period of time, that such performance is prevented or delayed by

events which constitute a force majeure.

61.     For the purpose of this Consent Decree, a force majeure is defined as any event

arising from circumstances beyond the control of the Defendants and that cannot be overcome by

the Defendants' diligent and timely efforts.  Economic hardship, normal inclement weather,

changes in the Defendants' elected officials, and increased costs of performance shall not be

considered events beyond the reasonable control of the Defendants for purposes of determining

whether an event is a force majeure.

62.     In the event of a force majeure, the time for performance of the activity delayed

by the force majeure shall be extended for the time period of the delay attributable to the force

majeure.  The time for performance of any activity dependent on the delayed activity shall be

similarly extended, except to the extent that the dependent activity can be reasonably

implemented in a shorter time.  EPA shall determine whether dependent activities will be

delayed by the force majeure and whether the time period should be extended for performance of

such activities.  The Defendants shall adopt all reasonable measures to avoid or minimize any

delay caused by a force majeure.

63.     When an event occurs, has occurred, or is reasonably expected to occur that may

delay or prevent the performance of any obligation under this Consent Decree and which the

Defendants believes is a force majeure, the Defendants shall notify by telephone the EPA

representative identified in Section XII (Notification) within 24 hours of the Defendants'

31

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

knowledge of such event.  Telephone notification shall be followed by written notification, made

within seven (7) working days of the Defendants' knowledge of the event.  The written

notification shall fully describe: the event that may delay or prevent performance; reasons for the

delay; the reasons the delay is beyond the reasonable control of the Defendants; the anticipated

duration of the delay; actions taken or to be taken to prevent or minimize the delay; a schedule

for implementation of any measures to be taken to mitigate the effect of the delay; and the time

needed to implement any dependent activities.

64.    The Defendants' failure to comply with the force majeure notice requirements

provided in Paragraph 63, above, for any delay in performance will be deemed an automatic

forfeiture of its right to assert that the delay was caused by a force majeure.

## XI.    DISPUTE RESOLUTION

65.    Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism for disputes arising under

or with respect to this Decree.  If the Defendants disagree with any determination made by EPA

under this Consent Decree related to (1) stipulated penalties, (2) injunctive relief, (3) Section VII

(Non-Compliance With Consent Decree), (4) force majeure, or (5) the termination of the

Consent Decree, Defendants shall send written notice to EPA and DOJ outlining the nature of the

dispute and requesting informal negotiations to resolve the dispute.  Such period of informal

negotiations shall not extend beyond thirty (30) working days from the date when the notice was

sent unless the parties agree otherwise.

66.    If the informal negotiations are unsuccessful, the determination of EPA shall

control, unless the Defendants file a motion with this Court for dispute resolution.  Any such

32

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

motion must be filed within thirty (30) Days after receipt by the Defendants of a notice in writing

terminating informal negotiations, and such motion must be concurrently sent to DOJ and EPA

in accordance with Section XII (Notification) of this Consent Decree.  The United States shall

respond to the Defendants' motion within the time period allowed by the Local Rules of this

Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

67.     The invocation of formal dispute resolution procedures under this Section shall

not, by itself, extend, postpone or affect in any way any obligation of the Defendants under this

Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties

with respect to the disputed matter shall continue to accrue but payment to the United States shall

be stayed pending resolution of the dispute.  In the event that the Defendants do not prevail on

the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII

(Stipulated Penalties).

## XII.    NOTIFICATION

68.     Notifications, certifications, reports, or other communications required pursuant

to this Consent Decree shall be deemed submitted on the date:  (1) postmarked and sent by

certified mail, return receipt requested; (2) sent by facsimile transmission, with confirmation of

receipt; (3) sent by overnight delivery service; or (4) sent by email, with confirmation of receipt.

If a notification, certification, report or other communication required by this Consent Decree is

sent by first class mail, it shall be deemed submitted on the date that it is actually received.

Except as specified otherwise, when written notification to or communication with a party is

required by the terms of this Consent Decree, it shall be addressed as follows:

33

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

<u>As to the United States</u>:

<u>For DOJ</u>
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7611 - Ben Franklin Station
Washington, D.C.  20044-7611
Reference Case DJ No. 90-5-1-1-10496

Cynthia M. Ferguson, Senior Litigator
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D Street NW
Washington, DC
Telephone: (202) 616-6560
Facsimile:  (202) 616-6583
Email: cynthia.ferguson@usdoj.gov

<u>For EPA</u>
Chris Muehlberger, Assistant Regional Counsel
U.S. EPA Region 7
11201 Renner Boulevard
Lenexa, Kansas 66219
Telephone:  (913) 551-7623
Fax: (913) 551-9623
E-mail: muehlberger.christopher@epa.gov

<u>As to the Omaha Tribe of Nebraska</u>:

Chairman, Omaha Tribe of Nebraska Council
Clifford Wolfe, Jr.
101 Main Street
P.O. Box 368
Macy, Nebraska 68039
Telephone:  (402) 837-5391
Fax: (402)-837-5308
E-mail: cwolfe@omahatribe.com

Maurice Johnson, Attorney General for Omaha Tribe of Nebraska
101 Main Street
P.O. Box 368

34

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

> Macy, Nebraska 68039
> Telephone:  (402) 837-5391
> Fax: (402) 837-5308
> E-mail: mjohnson@omahatribe.com
>
> Derrina Jackson, Utilities Director
> 102 Skunkhollow Drive
> Macy, Nebraska 68039
> Telephone:  (402) 837-5026
> Fax:  (402) 837-5022
> E-mail: djackson@omahatribe.com
>
> Carlton LeCount, Acting Utilities Commission Chairman
> 102 Skunkhollow Drive
> Macy, Nebraska 68039
> Telephone:  (402) 837-5391 (extension 102)
> Fax:  (402) 837-5022
> E-mail: clecount@omahatribe.com

Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

69.     All submissions made pursuant to this Consent Decree shall be signed and affirmed by a responsible official of the Defendants using the following certification statement:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that, based on inquiry of those individuals immediately responsible for obtaining the information, I certify that the information is true, accurate, and complete to the best of my knowledge, information, and belief.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment.

## XIII.    GENERAL PROVISIONS

70.     <u>Certification</u>. Defendants certify that, to the best of their knowledge and belief, after thorough inquiry, they have submitted to the United States Financial Information that fairly, accurately, and materially sets forth their financial circumstances, and that those circumstances

35

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

have not materially changed between the time the Financial Information was submitted to the

United States and the time Defendants signed this Consent Decree.

71.   Effect of Settlement/Reservation of Rights.

a.   Except as provided in Paragraph 71.d, This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint through the date of lodging of this Decree.

b.   This settlement is conditioned upon the veracity and completeness of the Financial Information provided to the United States by the Defendants. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information provided by Defendants, or the financial certification made by the Defendants in Paragraph 70, is false or, in any material respect, inaccurate.  Defendants shall forfeit all payments made pursuant to this Consent Decree.

c.   The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 71.a.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the SDWA, CWA, or RCRA, or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 71.a.  The United States further reserves all legal and equitable remedies to

36

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

address any imminent and substantial endangerment to the public health or

welfare or the environment arising at, or posed by, the Tribal Utilities,

whether related to the violations addressed in this Consent Decree or

otherwise.

d.   The United States further reserves all legal and equitable remedies available to

address, or to require Defendants to address, any and all contamination at the

Mother Earth Facility.

e.   In any subsequent administrative or judicial proceeding initiated by the United

States for injunctive relief, civil penalties, other appropriate relief relating to

the Tribal Utilities, Defendants shall not assert, and may not maintain, any

defense or claim based upon the principles of waiver, res judicata, collateral

estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses

based upon any contention that the claims raised by the United States in the

subsequent proceeding were or should have been brought in the instant case,

except with respect to claims that have been specifically resolved pursuant to

Paragraph 71.a. of this Section.

f.   This Consent Decree is not a permit, or a modification of any permit, under

any federal, tribal, state, or local laws or regulations.  This Consent Decree in

no way affects the Defendants' responsibilities to comply with all federal,

tribal, or local laws, regulations, or permits.  Defendants' compliance with this

Consent Decree shall be no defense to any action commenced pursuant to any

such laws, regulations, or permits, except as set forth herein.  The United

37

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the SDWA, CWA, RCRA, or with any other provisions of federal, tribal, state, or local laws, regulations, or permits.

g.  Nothing in this Consent Decree shall diminish EPA's ability to request information from the Defendants under applicable laws and regulations.

h.  This Consent Decree does not limit or affect the rights of the Plaintiff or Defendants against any third parties (parties not specifically part of this Consent Decree), nor does it limit the rights of such third parties against the Defendants except as provided by law.

i.  This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

72.  <u>Fees.</u>  Each party shall bear its own costs and attorney's fees in this action.

73.  <u>Effective Date</u>.  This Consent Decree shall be effective upon the date that it is entered by the Court ("Effective Date").  As provided in Section VIII (Stipulated Penalties), the stipulated penalty provisions of this Consent Decree shall be retroactively enforceable with regard to any and all violations that have occurred between lodging and entry of this Consent Decree and Section X (Force Majeure) and Section XI (Dispute Resolution) shall be available with respect to such violations.

74.  <u>Integration and Modifications</u>.  The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

Parties.  Where the modification constitutes a material change to this Decree, it shall be effective

only upon approval by the Court.

    75.   <u>Termination</u>.

        a.  If the Defendants have not been required to outsource operation, maintenance, and management of the Drinking Water System pursuant to Paragraph 42 of this Consent Decree, the Defendants may make a written request to the United States to terminate the Consent Decree after the Defendants i) complete all injunctive relief specified in this Consent Decree; ii) pay all outstanding penalties; iii) have remained in material compliance with the SDWA, CWA, and RCRA (as determined by EPA) for four (4) consecutive years following the Effective Date of this Consent Decree; and iv) have submitted documentation to EPA demonstrating that the Defendants have the technical, financial, and managerial capacity to maintain compliance with the SDWA, CWA, and RCRA (as determined by Appendix F) or submitted documentation to EPA demonstrating that the Defendants have outsourced the operation, maintenance, and management of the Drinking Water System.  If the United States determines that the Defendants have met conditions i) through iv) in this sub-paragraph, then the United States shall move for termination of this Consent Decree.  If EPA determines that Defendants have materially violated the SDWA, CWA, and/or RCRA within the four-year period, then EPA may elect to delay termination of the Consent Decree after the four-year period.

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

EPA may delay termination until Defendants have been in compliance with

the SDWA, CWA, and RCRA for 12 consecutive months.

b. If Defendants have been required to outsource operation, maintenance, and

management of the Drinking Water System pursuant to Paragraph 42 of this

Consent Decree, the Defendants may make a written request to the United

States to terminate the Consent Decree after the Defendants i) complete all

injunctive relief specified in this Consent Decree; ii) pay all outstanding

penalties; iii) have remained in material compliance with the SDWA, CWA,

and RCRA for four (4) consecutive years following the Effective Date of this

Consent Decree; and iv) have submitted documentation to EPA demonstrating

that the Defendants have the technical, financial, and managerial capacity to

maintain compliance with the SDWA, CWA, and RCRA (as determined by

Appendix F) or have submitted documentation to EPA certifying that the

Defendants have elected to continue outsourcing the operation, maintenance,

and management of the Drinking Water System.  If the United States

determines that the Defendants have met conditions i) through iv) in this sub-

paragraph, then the United States shall move for termination of this Consent

Decree.  If EPA determines that Defendants have materially violated the

SDWA, CWA, and/or RCRA within the four-year period, then EPA may elect

to delay termination of the Consent Decree after the four-year period.  EPA

may delay termination until Defendants have been in compliance with the

SDWA, CWA, and RCRA for 12 consecutive months.

40

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

      c.  At Defendants' discretion, and subject to EPA approval, the Defendants may make a written request to the United States to terminate the Consent Decree after three (3) years following entry of this Consent Decree and any time thereafter prior to the end of its four (4) year effective period.  Any such request by the Defendants shall be accompanied by a certification, consistent with Paragraph 69, that the Defendants have satisfied all obligations of the Consent Decree along with supporting documentation.

      d.  After receiving a written request from the Defendants to terminate the Consent Decree, the United States shall provide the Defendants with a written determination whether it intends to terminate the Consent Decree.  If the United States does not file a motion to terminate the Consent Decree within thirty (30) Days after receipt of the Defendants' written request, the Defendants may file a motion with the Court to terminate the Consent Decree. The United States reserves the right to object to any motion to terminate filed by the Defendants if the Defendants have not attained compliance with all requirements of this Consent Decree.

76.   <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction over this case until the Consent Decree is terminated, for the purpose of resolving any disputes arising under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

77.   <u>Public Comment</u>.  The Defendants agree and acknowledge that final approval of this Consent Decree by the United States and entry of this Consent Decree is subject to the

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree

requirements of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent

Decree in the Federal Register, opportunity for public comment for at least thirty (30) days, and

consideration of any comments prior to entry of the Consent Decree by the Court.  This Consent

Decree is also subject to the opportunity for a public meeting in the affected area requirement in

accordance with RCRA Section 7003(d), 42 U.S.C. § 6973(d).  The United States reserves its

right to withdraw consent to this Consent Decree based on comments received during the public

notice period.  The Defendants consent to entry of this Consent Decree without further notice

and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to

challenge any provision of the Decree, unless the United States has notified Defendants in

writing that it no longer supports entry of the Decree.

     78.   <u>Final Judgment</u>.  Upon entry by this Court, this Consent Decree shall constitute a

final judgment for purposes of Federal Rules of Civil Procedure 54 and 58.


SO ORDERED THIS 27TH DAY OF OCTOBER, 2014

*John M. Gerrard*
_____
UNITED STATES DISTRICT JUDGE

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree
*THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of* <u>United States v.</u>
<u>Omaha Tribe of Nebraska, et al</u>, *subject to the public notice and comment requirements of 28*
*C.F.R. § 50.7.*

**For the Plaintiff United States of America**:

DATED: _08/27/2014_

THOMAS A. MARIANI, JR.
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7611
Washington, D.C.  20044-7611

DATED: _08/28/2014_

CYNTHIA M. FERGUSON
Senior Litigator
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D Street NW
Washington, DC 20004
Telephone: (202) 616-6560
Facsimile: (202) 514-8865
E-mail: Cynthia.Ferguson@usdoj.gov

43

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree
*THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Omaha Tribe of Nebraska, et al, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.*

**For the Plaintiff United States Environmental Protection Agency:**

DATED: 8/7/14

KARL BROOKS
Regional Administrator
U.S. EPA Region 7
11201 Renner Boulevard
Lenexa, KS 66219

DATED: 8.6.14

CHRIS MUEHLBERGER
Assistant Regional Counsel
U.S. EPA Region 7
11201 Renner Boulevard
Lenexa, KS 66219

44

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree
*THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. Omaha Tribe of Nebraska, et al</u>, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.*

**For the Plaintiff United States Environmental Protection Agency:**

DATED:  ___8/5/14___          _____
                              SUSAN SHINKMAN
                              Director
                              Office of Civil Enforcement
                              Office of Enforcement and Compliance Assurance
                              U.S. Environmental Protection Agency

45

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree
*THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v.</u>*
<u>*Omaha Tribe of Nebraska, et al*</u>.


**For Defendant Omaha Tribe of Nebraska:**

The undersigned representative of Defendant Omaha Tribe of Nebraska certifies that he is fully

authorized to enter into the terms and conditions of this Consent Decree and to execute and

legally bind the Party he represents to this document (see Appendix G).


DATED: ___7/10/14___          _Clifford Wolfe Jr_
                              CLIFFORD WOLFE, JR.
                              Omaha Tribal Chairman
                              Omaha Tribe of Nebraska
                              101 Main Street
                              P.O. Box 368
                              Macy, Nebraska 68039
                              Telephone: (402) 837-5391
                              Fax: (402)-837-5308
                              E-mail: cwolfe@omahatribe.com

46

*United States v. Omaha Tribe of Nebraska, et al.* Consent Decree
*THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. Omaha Tribe of Nebraska, et al.</u>*

**For Defendant Omaha Tribal Utility Commission:**


DATED: _7-10-14_       _____

CARLTON LECOUNT
Acting Utilities Commission Chairman
102 Skunkhollow Drive
Macy, Nebraska 68039
Telephone: (402) 837-5391 (extension 102)
Fax: (402) 837-5022
E-mail: clecount@omahatribe.com

47

**Omaha Tribe Consent Decree – Appendix A**
**Financial Information**

1. Omaha Tribe of Nebraska Financial Statements with Supplemental Information and Accompanying Independent Auditor's Reports for Year Ended Sept. 30, 2009 (FY2009) and ear Ended Sept. 30, 2010 (FY2010) by Bland & Associates, P.C. Certified Public Accountants

2. Omaha Tribe of Nebraska Primary Government Financial Statements with Supplemental Information and Accompanying Independent Auditor's Report Sept. 30, 2011 (FY2011) by REDW LLC CPAs, Business & Financial Advisors

3. Omaha Tribal Council Budget FY 2012-2013 (Oct. 1, 2012 – Sept. 30, 2013); Omaha Tribe of Nebraska Tribal Appropriations 2013-2014 Budget

4. Omaha Tribe of Nebraska FY2013 Account Codes - information on Tribal departments and their accounts

5. Omaha Tribe of Nebraska Purchasing Management Policy and Procedure passed at Omaha Tribal Council Meeting July 21, 2011

6. Poverty and Unemployment on the Omaha Reservation by Mark Gordon, Nebraska Indian Community College

7. 2012 U.S. Return of Partnership Income prepared for Omaha Nation C-Store, LLC by Clinton Peterson CPA, PC

8. 2009 Omaha Tribe of Nebraska Resolution # 10-14 Re: Blackbird Bend Corporation, charter showing Tribe's interest and relationship

9. January 12, 2012 Casino Omaha Independent Auditors' Report for fiscal year ending September 30, 2011 by Hinton, Burdick, Hall & Spilker Nevada, LC.

10. April 29, 2010 Casino Omaha (an enterprise fund of the Omaha Tribe of Nebraska) Financial Statements for the year ended September 30, 2009 with Independent Auditors' Report by Hinton, Burdick, Hall & Spilker Nevada, LC

11. December 20, 2012 Lucky 77 Casino Financial Statement for the year ended September 30, 2012 with Independent Accountants' Review Report by Hinton, Burdick, Hall & Spilker Nevada, LC; January 25, 2012 Lucky 77 Casino Financial Statement for the year ended September 30, 2011 with Independent Accountants' Review Report by Hinton, Burdick, Hall & Spilker Nevada, LC; November 24, 2010 Lucky 77 Casino Financial Statement for the years

ended September 30, 2010 and 2009 with Independent Auditors' Review Report by Hinton, Burdick, Hall & Spilker Nevada, LC; January 22, 2010 Lucky 77 Casino Financial Statement for the year ended September 30, 2009 with Independent Auditors' Review Report by Hinton, Burdick, Hall & Spilker Nevada, LC

12. Utilities budgets for water/wastewater and solid waste, prepared by the Omaha Tribe of Nebraska at EPA's request.

13. Information prepared by the Tribal CFO on the financial health and resources of the Omaha Tribe of Nebraska at EPA's request

14. December 2, 2013 and December 12, 2013 Letters to Dan Lewis, Attorney, Shanker & Kewenvoyouma, P.L.L.C. from Derrina Jackson, Interim Director for Omaha Tribal Utilities Department – responding to Question 3a-3h of the United States' Tribal Government Ability to Pay Initial Request for Information

15. December 12, 2013 Letter to Dan Lewis, Attorney, Shanker & Kewenvoyouma, P.L.L.C. from Derrina Jackson, Interim Director for Omaha Tribal Utilities Department

16. Omaha Tribal Utilities Department General Ledger as of December 3, 2013;  Omaha Tribal Utilities Department A/P Aging Summary as of December 3, 2012; Omaha Tribal Utilities Department A/R Aging Summary as of December 31, 2012

17. Omaha Tribal Utilities bank statements 12-24-2009 through 12-30-2011, and 11-27-2012 through 12-02-2013

18. Omaha Tribal Utilities account of bank transactions 11-27-2012 through 12-02-2013

19. Omaha Tribal Utilities Department invoice for February, 2013  - example of billing

20. Omaha Tribe of Nebraska Project Financial Analysis Questions 10-22-2013 – responses to Environmental Finance Center inquiry

21. Lucky 77 Casino bank statements dated Dec. 31, 2012, Jan. 31, 2013

22. Casino Omaha bank statements for Dec. 3, 2012 through Dec. 31, 2012, and Jan. 2, 2012 through Jan 31, 2012

**Omaha Tribe Consent Decree – Appendix B**
**Utilities Operating Plan**
**Budget Requirements**

1.  Provide a budget for the drinking water, wastewater and solid waste management utilities that addresses a 5-year time frame.  The budget shall identify:

    - Revenue
    - Operating expenses
    - Reserve funds
    - Capital improvement plans

2.  The budget shall compare all anticipated revenue and planned expenditures, discuss the Reserve Account to be used for emergency situations and equipment replacement, and include a capital improvement plan that identifies future projects and their anticipated costs.

3.  The budget shall include a description of the expenditure control procedures, processes and reports that are in place to assure adequate fiscal control, describe purchasing procedures or policies to prevent misuse of funds, and include information to indicate whether the utility systems have adopted generally accepted accounting and auditing procedures.

4.  Describe processes for regular review of the utilities rate structure.

5.  Describe processes for planning and funding long-term capital needs and to address emergency issues.

6.  Complete the attached budget worksheets (Exhibit 1)

**APPENDIX B EXHIBIT 1**

| WORKSHEET A - EXPENSE BUDGET | | | Prior Year | Current Year | Year 1 | Year 2 | Year 3 | Year 4 |
|---|---|---|---|---|---|---|---|---|
| | | | Actual Budget | Annual Budget | Projected Budget | | | |
| 1A | | **Expenses** | | | | | | |
| 2A | | Personnel Costs | | | | | | |
| 3A | | Utilities | | | | | | |
| 4A | | Outside Services | | | | | | |
| 5A | | Small Equipment, Materials, and Parts | | | | | | |
| 6A | | Purchased Water | | | | | | |
| 7A | | Chemicals, Treatment, and Monitoring | | | | | | |
| 8A | | Transportation | | | | | | |
| 9A | | Office Supplies | | | | | | |
| 10A | | Customer Billing and Collection | | | | | | |
| 11A | | *Income Tax* | | | | | | |
| 12A | | *Property taxes or payments in lieu of taxes* | | | | | | |
| 13A | | | | | | | | |
| 14A | | | | | | | | |
| 15A | | | | | | | | |
| 16A | | | | | | | | |
| 17A | | | | | | | | |
| 18A | | | | | | | | |
| 19A | | Depreciation (please see instructions) | | | | | | |
| 20A | | *Total Expenses (total lines 2A to 19A)* | $ | $ | $ | $ | $ | $ |

APPENDIX B EXHIBIT 1

# WORKSHEET A - EXPENSE BUDGET

## Expenses

**Personnel costs.** Enter the cost of salaries and benefits of the water system's operators and administrative employees.

**Utilities.** Enter the annual utility bill of the water system. Utilities include any power supply, including gas and electric, water supply, sewage treatment, and telephone/fax bills among others.

**Outside services.** Enter the total cost of any services that the water system hires another company or individual to perform. These services can include, but are not limited to, the provision of insurance, external auditors and other accounting services, legal services, architects, engineers, consultants, contractors, etc.

**Small equipment, materials, and parts.** Enter the total annual cost of any equipment, materials, and parts that are purchased to make repairs or otherwise maintain the water system. Only enter those items which will be paid for in a single year. Other items that have a long life (ten or fifteen years at a minimum), have a high cost that must be paid for over time, and are nonrecurrent should be added to capital outlays on Worksheet B.

**Purchased water.** Enter the total annual cost of any water that the water system purchases from other sources and then redistributes to the customers of the water system.

**Chemicals, treatment, and monitoring.** Enter the total annual cost of water treatment chemicals, other costs associated with treating the water, and the cost of monitoring water quality, including the cost of all monitoring and testing equipment.

**Transportation.** Enter the costs that the water system incurs for transportation-related expenses. Among others, these include the direct cost of vehicles and vehicle maintenance and repair.

**Office supplies.** Enter the cost of supplies that are used in administrative work. These supplies include paper, pens, etc.

**Customer billing and collection.** Enter the expenses that the water system incurs in sending out customer bills and collecting payments (do not include the associated costs of personnel nor outside services).

**Income Taxes.** Enter the amount of the water system's annual income taxes, if applicable.

**Payments in lieu of taxes.** Enter the value of any taxes paid on property or any payments made in lieu of taxes.

**Other.** Several blank lines are available to enter other expenses not included above that the water system may incur.

**Depreciation Expense.** Depreciation refers to the decrease in value of property, plant, and equipment over time. If it is not a practice of your water system to account for depreciation, leave the depreciation expense line blank.  If it is a practice of your water system to account for depreciation and you contribute to a replacement/depreciation fund each year and the amount that you contribute is greater than or equal to your annual depreciation expense, leave depreciation expense blank. However, if you do not have a replacement fund or contribute significantly less to your replacement fund than the value of your depreciation expense enter your depreciation expense on Worksheet A.

**Total Expenses.** Enter the sum of all the expenses listed above.

**APPENDIX B EXHIBIT 1**

| WORKSHEET B - CAPITAL BUDGET | | | Prior Year | Current Year | Year 1 | Year 2 | Year 3 | Year 4 |
|---|---|---|---|---|---|---|---|---|
| | | | Actual Budget | Annual Budget | Projected Budget | | | |
| 1B | **Capital Outlays** | | | | | | | |
| 2B | | New Capital Facilities | | | | | | |
| 3B | | Renewal and Replacement Facilities | | | | | | |
| 4B | | | | | | | | |
| 5B | | | | | | | | |
| 6B | | | | | | | | |
| 7B | | | | | | | | |
| 8B | | *Total Capital Outlays (total lines 2B to 7B)* | $ | $ | $ | $ | $ | $ |
| 9B | **Capital Sources** | | | | | | | |
| 10B | | Loan/Bond Proceeds | | | | | | |
| 11B | | Equity | | | | | | |
| 12B | | Contributions/Connection fees | | | | | | |
| 13B | | Draw from Replacement Reserve | | | | | | |
| 14B | | ***Grant Funds*** | | | | | | |
| 15B | | | | | | | | |
| 16B | | | | | | | | |
| 17B | | | | | | | | |
| 18B | | *Total Capital Sources (total lines 10B to 17B)* | $ | $ | $ | $ | $ | $ |
| 19B | **NET CAPITAL OUTLAYS (line 8B less line 18B)** | | $ | $ | $ | $ | $ | $ |
| 20B | **Capital Financing** | | | | | | | |
| 21B | | Principal, Interest, and Return on Equity | | | | | | |
| 22B | | | | | | | | |
| 23B | | | | | | | | |
| 24B | | | | | | | | |
| 25B | | *Total Capital Financing (total lines 21B to 24B)* | $ | $ | $ | $ | $ | $ |

APPENDIX B EXHIBIT 1

**WORKSHEET B - CAPITAL BUDGET**

<u>**Capital Outlays**</u>

**New Capital Facilities.** Enter the sum of all costs that are associated with purchasing or constructing new facilities for the water system whose costs involve multiple-year commitments. These items may include the pumping station, distribution pipes, storage tanks, treatment plant, and other buildings and equipment.

**Renewal and Replacement Facilities.** Enter the sum of all costs that are associated with purchasing or constructing renewal or replacement facilities for the water system that involve multiple-year commitments.

**Other.** Several blank lines are available to enter capital outlays of the system that are not included in the two previous categories.

**Total Capital Outlays.** Enter the sum of the capital outlays listed above.

<u>**Capital Sources**</u>

**Loan/Bond Proceeds.** Enter the amount of money the water system obtains through borrowing, including bank loans, the issuing of bonds, etc.

**Equity.** Enter the amount of contributions that the water system receives in exchange for a right, claim, or interest in the water system.

**Contributions/Connection Fees.** Enter the sum of funds that the water system receives from construction assistance contributions or from the imposition of fees on the extension of services.

**Draw from Replacement Reserve.** Enter the amount of money that the water system used from its replacement reserve to finance capital projects.

**Other.** Several blank lines are available to enter capital sources of the system that are not included in the previous categories. **Include any grant funds that are received.**

**Total Capital Sources.** Enter the sum of the capital sources noted above.

**Net Capital.** Subtract total capital sources from total capital outlays. Ideally, the net capital of the water system should equal zero. The goal should be to balance the flows of capital outlays and capital sources. If the net capital figure is positive the water system has inadequate capital sources to meet its capital outlays. If net capital is negative the water system has more funds than necessary to finance capital improvements. It is important to note that in a given year net capital may vary significantly due to the timing of cash flows. For example, the year in which a large bond issue is made, to pay for a multi-year construction project, capital sources may outweigh capital outlays significantly.

<u>**Capital Financing**</u>

**Principal, Interest, and Return on Equity.** Enter the amount that the water system repays annually on all debt and equity incurred to finance capital projects, including both principal and interest payments.

**Other.** Several blank lines are available to enter other capital financing of the system that is not included in the previous category.

**Total Capital Financing.** Enter the sum of all capital financing of the water system listed above.

APPENDIX B EXHIBIT 1

| WORKSHEET C - RESERVES BUDGET | | Prior Year | Current Year | Year 1 | Year 2 | Year 3 | Year 4 |
|---|---|---|---|---|---|---|---|
| | | Actual Budget | Annual Budget | Projected Budget | | | |
| 1C | **Reserve for** _____ | | | | | | |
| 2C | | Annual Installment | | | | | | |
| 3C | | Running Balance | | | | | | |
| 4C | | Target Balance | | | | | | |
| 5C | **Reserve for** _____ | | | | | | |
| 6C | | Annual Installment | | | | | | |
| 7C | | Running Balance | | | | | | |
| 8C | | Target Balance | | | | | | |
| 9C | **Reserve for** _____ | | | | | | |
| 10C | | Annual Installment | | | | | | |
| 11C | | Running Balance | | | | | | |
| 12C | | Target Balance | | | | | | |
| 13C | **Reserve for** _____ | | | | | | |
| 14C | | Annual Installment | | | | | | |
| 15C | | Running Balance | | | | | | |
| 16C | | Target Balance | | | | | | |
| 17C | **TOTAL ANNUAL RESERVE INSTALLMENTS (total lines 2C, 6C, 10C, 14C)** | $ | $ | $ | $ | $ | $ |
| 18C | **TOTAL RUNNING BALANCE (total lines 3C, 7C, 11C, 15C)** | $ | $ | $ | $ | $ | $ |
| 19C | **TOTAL TARGET BALANCE (total lines 4C, 8C, 12C, 16C)** | $ | $ | $ | $ | $ | $ |

**APPENDIX B EXHIBIT 1**

## WORKSHEET C - RESERVES BUDGET

**Reserve for _____.** Lines 1C, 5C, 9C, and 13C are available to enter the reserve accounts that the water system uses. Examples of reserve accounts include:

· **Operating Cash Reserve;**
· **Replacement/Depreciation Reserve;**
· **Emergency Reserve; and**
· **Debt Service Reserve.**

The annual installment to the reserve account should equal the desired balance of the reserve divided by the number of years before that balance needs to be reached. The desired or target balance should be sufficient to replace depreciated equipment, address the worst emergency situation, or support the issuance of debt. The amount that is desired or targeted for future needs should be noted on lines 4C, 8C, 12C, and 16C. Also, denote the current running balance of each reserve account (on lines 3C, 7C, 11C, and 15C).

**Total Annual Reserve Installments.** Denote the total amount of money that the water system allocates to all reserve accounts annually.

**Total Running Balance.** Denote the total amount of money in all reserve accounts.

**Total Target Balance.** Denote the total desired or targeted balance of all reserve accounts.

**APPENDIX B EXHIBIT 1**

| | WORKSHEET D – REVENUE ANALYSIS | Prior Year | Current Year | Year 1 | Year 2 | Year 3 | Year 4 |
|---|---|---|---|---|---|---|---|
| | | Actual Budget | Annual Budget | | Projected Budget | | |
| 1D | **Revenue Requirements** | | | | | | |
| 2D | Total Expenses (line 20A) | $ | $ | $ | $ | $ | $ |
| 3D | Net Capital Outlays (line 19B) | $ | $ | $ | $ | $ | $ |
| 4D | Total Capital Financing (line 25B) | $ | $ | $ | $ | $ | $ |
| 5D | Total Annual Reserve Installments (line17C) | $ | $ | $ | $ | $ | $ |
| 6D | **TOTAL REVENUE REQUIREMENT (total lines 2D to 5D)** | $ | $ | $ | $ | $ | $ |
| 7D | Number of Connections | | | | | | |
| 8D | (000's) Gallons Sold | | | | | | |
| 9D | Revenue Requirement per Number of Connections (line 6D/line 7D) | $ | $ | $ | $ | $ | $ |
| 10D | Revenue Requirement per (000's) Gallons Sold (line 6D/line 8D) | $ | $ | $ | $ | $ | $ |
| 11D | **Revenue Sources** | | | | | | |
| 12D | Rate Revenue | | | | | | |
| 13D | | | | | | | |
| 14D | | | | | | | |
| 15D | | | | | | | |
| 16D | **TOTAL REVENUE (total lines 12D to 15D)** | $ | $ | $ | $ | $ | $ |
| 17D | **BUDGET SURPLUS (DEFICIT) (line 16D less line 6D)** | $ | $ | $ | $ | $ | $ |
| 18D | *Total Revenue per Number of Connections (line 16D/line 7D)* | $ | $ | $ | $ | $ | $ |
| 19D | *Total Revenue per (000's) Gallons Sold (line 16D/line 8D)* | $ | $ | $ | $ | $ | $ |

APPENDIX B EXHIBIT 1

**WORKSHEET D - REVENUE ANALYSIS**

## Revenue Requirements

Enter the value of total expenses, net capital, total capital financing, and total annual reserve installments from the previous forms as noted.

**Total Revenue Requirement.** Together the items mentioned above encompass the revenue requirement of the water system. Enter the total of these items here.

**Number of Connections.** Enter the number of connections that the water system serves or expects to serve in future years.

**(000's) Gallons Sold.** In thousands, enter the total number of gallons of water the water system sells or expects to sell annually.

**Revenue Requirement per Number of Connections.** Divide the total revenue requirement by the number of connections.

**Revenue Requirement per Thousand Gallons Sold.** Divide the total revenue requirement by the gallons sold in thousands.

**Current Revenue** (NOTE: Future revenues are difficult to predict. Enter revenue values for years 1 to 4 only if the water system has the capability to accurately forecast these values).

**Rate Revenue.** Enter the total amount of revenue that the water system collects through the levying of rates on water usage.

**Other.** Blank lines are available to enter other sources of revenue. These sources may include, but are not limited to, the following:

· Bulk Water Rates;
· Fire Protection; and
· Fees and Charges (bad check fees, reconnect fees, meter testing fees, late payment charges).

If the water system has more sources of revenue than available blank lines, group similar revenues together into broader categories and note these groupings for future reference.

**Total Revenue.** Enter the sum of all revenue collected by the water system.

**Budget Surplus (Deficit).** Subtract the water system's total revenue requirement from its total revenue.

**Total Revenue per Number of Connections.** Divide the total revenue by the number of connections.

**Total Revenue per Thousand Gallons Sold.** Divide the total revenue by the gallons sold in thousand

**Omaha Tribe Consent Decree – Appendix C**
**Utilities Operating Plan**
**Asset Management Plan Requirements**

<u>**Managerial Capacity**</u>

1. Provide contact information for personnel responsible for ensuring compliance with federal drinking water and wastewater regulations.

2. Describe any contracts for management or operations for the drinking water, wastewater or solid waste management utilities, and indicate how legal, engineering, and other professional services are provided.

3. Provide a description of the legal basis of the utilities system ownership and authorities.

4. Describe any leases or easements for land, water supply sources or physical facilities used in operating the drinking water, wastewater and solid waste management utilities.

5. Describe the qualifications of the managers of the drinking water, wastewater and solid waste management utilities.

6. Describe the training plan to ensure managers and operators are current with regulatory requirements for managing and operating the drinking water and wastewater utilities.

7. Provide the Emergency Management Plan for the drinking water, wastewater and solid waste management utilities.

8. Describe the customer service policies, including processes for addressing customer complaints. Describe customer rights and responsibilities.

9. Disclose any plans to change ownership or operations of the drinking water, wastewater or solid waste management utilities.

---

<u>**Management and Administration**</u>

1. Describe the organization and control structure for personnel responsible for management and operations of the drinking water, wastewater and solid waste management utilities.  Establish the limits of authority and specific functional areas for key personnel.  Indicate who has authority for scheduling and assigning work.

2. For the drinking water and wastewater utilities, describe rules for system modifications, standard construction specifications and new hook ups.

3. For the drinking water utility, describe cross connection control and backflow prevention processes.

4.  For the drinking water and wastewater utilities, describe processes to monitor and assure regulatory compliance (including routine sampling and reporting), for maintaining compliance records, and actions in the event a violation is incurred.

5.  Describe provisions for emergency water supplies in the event of a system failure or inadequate supply.

6.  Describe operational provisions in the event of a spill or contamination of the water supply by hazardous or toxic substances.

7.  Describe the chain of command protocol, including communication provisions with EPA, customers, and the media, in the event of an emergency impacting the drinking water or wastewater utilities.

8.  Describe the operational safety program, including routine and emergency provisions, implemented by the drinking water, wastewater and solid waste management utilities.

9.  Describe the process for scheduling routine preventive maintenance and for assuring adequate inventory of essential spare parts for the drinking water, wastewater and solid waste management utilities.

10. Describe relationships or agreements with vendors and suppliers to ensure prompt utilities maintenance and equipment support.

11. Describe the record keeping process for maintenance activities for the drinking water, wastewater and solid waste management utilities.

**Omaha Tribe Consent Decree - Appendix D**
**Quarterly Report Contents**

Paragraph 39 of the Consent Decree requires quarterly reporting of Defendants' progress in implementing the Injunctive Relief requirements outlined in Section V of the CD.  The following information, at a minimum, must be reported for each element of the Injunctive Relief:

1. General – The quarterly report must specifically identify any Injunctive Relief requirements or elements for which Defendants are non-compliant or delinquent.  Actions Defendants are planning to take to rectify any such areas of non-compliance should also be included.

2. Paragraph 18 – Report the open and closing balance of the Reserve Account and all transactions on the account processed during the quarter.

3. Paragraph 19 – Provide the names and proof of licensure status of all drinking water and wastewater operators employed during the quarter.  Provide certification for all training completed by the utility director chairman during the quarter.

4. Paragraph 20 – Provide certification for all training completed by the OTUC Chairman during the quarter.

5. Paragraph 21 – Provide a report summarizing any changes in utility staff personnel during the quarter.  Provide a line item summary of all revenue and expenses associated with the utilities operating budget for the quarter.

6. Paragraph 22 – Describe the status of the utilities operating budget each quarter.

7. Paragraph 23 – The Customer Database is to be updated annually for three years from the effective date of the Consent Decree, and need not be addressed in the regular quarterly reports.

8. Paragraph 24 – Provide an inventory or spreadsheet of all documents included in the Document Management System, highlighting any additions to the system that were made during the quarter.

9. Paragraph 25 – Provide copies of all logs, records, or other information that is to be maintained as specified in the Operations and Maintenance Plans for each of the utilities.  Such records shall be organized according to the utility system.

10. Paragraph 26 – Provide invoices for all waste disposed from the Mother Earth facility, an estimate of the remaining waste volume, and dated photographs illustrating the status of the facility grounds.  Once all waste has been removed, report the nature and quantity of any wastes that may have been disposed at the facility, accompanied by photographic documentation.

11. Paragraph 27 – Provide a description of the status of the preparation or implementation of the Sampling Analysis Plan, as appropriate.  After the Sampling and Analysis Plan has been implemented, provide a description of the status of the preparation or implementation of the Remediation Plan.

12. Paragraph 28 – Provide copies of any solid waste ordinances enacted during the quarter, and a summary of all violations or citations issued related to solid waste ordinances (redact personal info) during the quarter.

13. Paragraph 29 – Provide a reference to reporting completed and submitted as required by the NPDES permit.  No additional reporting is required for this paragraph.

14. Paragraph 30 – Provide a report describing the construction and operational status of the new wastewater lift station and backup generator.

15. Paragraph 31 – Provide a reference to reporting completed and submitted as required by the NPDES permit.  No additional reporting is required for this paragraph.

16. Paragraph 32 – Information required by this paragraph may be included with the summary as reported for paragraph 25.

17. Paragraph 33 – Provide a report summarizing all monitoring, reporting, and public notification conducted under the SDWA during the quarter.

18. Paragraph 34 – Provide a copy of any revised or updated drinking water system distribution maps if any were completed during the quarter.

19. Paragraph 35 – Provide a report describing the status of any drinking water meters installed during the quarter.  Include the location of any meters installed, and a summary of the percent completion of the entire meter installation project required by this paragraph.  Include this element in the quarterly reports until all meters are installed.

20. Paragraph 36 – Provide a summary of any pressure loss events or significant line breaks that occurred during the quarter.  Include the date the event was initially discovered, the locations in the system that were impacted, and the date the event was deemed closed by the EPA.

21. Paragraph 37 – Provide a report describing the status of each of the installations or inspections as required in this paragraph until each element is completed.

22. Paragraph 38 – Provide a summary of all CD-required Deliverables submitted during the quarter.

**Omaha Tribe Consent Decree – Appendix E**
**Operating Contractor General Requirements**

## General Contractor Qualifications

1. Contractor shall possess relevant experience in operating, managing, and maintaining Public Water Systems similar to (or more complex than) the Macy Public Water System ("Macy PWS") on a contractual basis, and provide documentation supporting such experience and activities.

2. Contractor shall demonstrate successful business standing by providing:
   - Copies of business entity filing(s) with the state
   - A description of the company, including its services, history,  corporate headquarters and regional office locations, company ownership, service areas, and number of employees
   - A summary of the employee skill sets or employee profiles
   - Recent financial statements
   - A summary of the current contracts in place
   - For the 5 most recent contracts, a summary of the general scope of services provided

## General Scope of Services

Operate, manage, and maintain all functions associated with the Macy PWS on a 24 hr / 7 day basis to comply with Safe Drinking Water Act (SDWA) requirements and meet needs of the Macy community:

- Provide appropriately licensed and qualified operating and managerial personnel
- Provide necessary equipment, supplies and services associated with routine Macy PWS operations and maintenance (O&M)
- Complete SDWA-required monitoring and reporting
- Perform necessary routine maintenance and preventive maintenance on system and components
- Complete operating and maintenance records/logs
- Regularly inspect major system components and advise Defendant of pending major repair and capital improvement requirements
- Distinguish scope of "routine" maintenance/preventive maintenance and "major" maintenance items for contractual purposes
- Perform billing and collection services for Macy PWS based on Defendant's prescribed rate structure;  issue notice of delinquent payments and perform service disconnections/reconnections per Defendant policies
- Assist Defendant in communicating with public and EPA concerning required SDWA reporting, including major pressure losses requiring the need for boil orders and other drinking water issues appropriate for public dissemination

**Omaha Tribe Consent Decree – Appendix F**
**Criteria to Demonstrate Technical, Managerial, and Financial Capacity of the Drinking Water System**

If Defendants have outsourced operation, maintenance, and management of the Drinking Water System pursuant to Section VI (Non-Compliance With Consent Decree) of the Consent Decree, and, in accordance with Paragraph 44, Defendants elect to terminate the outsourcing agreement, Defendants shall notify EPA in writing.  The notification shall include supporting documentation sufficient to determine whether Defendants meet the criteria outlined in this Appendix.  EPA shall make the final determination regarding whether Defendants have demonstrated that they have adequate technical, managerial, and financial capacity to resume operation, maintenance, and management of the Drinking Water System.  EPA shall use the following criteria to make its determination:

**Technical Criteria**

1.  Currently Defendants have employed, at a minimum, one Grade III and one Grade IV operator, licensed by the state of Nebraska and one additional staff member, to operate the Drinking Water System.

2.  Defendants have established an operator training program to ensure drinking water operators satisfy Nebraska's continuing education requirements.  Expenses for operator training are included in the budget approved by the Council for the Drinking Water System.

3.  Current distribution system maps are available for the Drinking Water System.

4.  Defendants have developed, and are prepared to implement the following for the Drinking Water System:

    a.  EPA-approved Operation & Maintenance (O & M) Plan
    b.  Cross-connection control program
    c.  Emergency Operations/Response Plan
    d.  Line break repair Standard Operating Procedures (SOP)

5.  Adequate backup equipment, facilities, and power are available to handle emergency situations for the Drinking Water System.

6.  Drinking Water System water storage facilities have been inspected for structural and sanitary defects within the past 3 years.

7.  Defendants have established defined standards for system modifications, new connections, and main extensions for the Drinking Water System.

**Managerial Criteria**

Defendants have developed, and are prepared to implement the following for the Drinking Water System:

   a. A defined managerial chain of command (including organizational chart)
   b. Utility operational by-laws and/or operating procedures
   c. Written job descriptions, including performance standards, and personnel policies for all utility operating staff
   d. Monthly review of revenue and expenses by utility management
   e. A records management and retention program that addresses all regulatory records requirements, O&M SOPs and records, personnel records, and financial records.
   f. A customer complaint and resolution process.


**Financial Criteria**

1. Defendants have developed, and are prepared to implement the following for all utilities (drinking water, wastewater, and solid waste):

   a. Annual budget for all utilities operations
   b. Regular financial planning and review processes
   c. Monthly billing for utilities services
   d. Independent cost accounting for each utility (drinking water, wastewater, solid waste)
   e. Defined processes and controls for purchasing and expenditures
   f. Defined processes and controls for hiring contractors
   g. Defined processes and controls for managing revenue
   h. A defined rate structure with a defined process for regular review of established rates
   i. Defined policies for collections and addressing late payments
   j. Defined processes for regular auditing of financial records and practices
   k. Defined processes for management approval of the utility budget

2. The utility rate revenue plus other designated revenue sources are sufficient to cover budget expenses.

3. The utility budget includes adequate funding to address facility depreciation, reserve funds, and capital improvements

# OMAHA TRIBE OF NEBRASKA



P. O. Box 368
Macy, Nebraska 68039

**EXECUTIVE OFFICERS**
Clifford Wolfe, Jr., Chairman
Doran Morris, Jr., Vice-Chairman
Tillie Aldrich, Treasurer
Gwen Porter, Secretary

TRIBAL ADMINISTRATION

(402) 837-5391
FAX (402) 837-5308

**MEMBERS**
Adriana Saunsoci
Vernon Miller
Jeffrey Miller

---

## RESOLUTION
## OMAHA TRIBAL COUNCIL
## No. 14-98

### *Authorizing the Chairman of the Omaha Tribe of Nebraska to Sign and enter into a Consent Decree in the Matter of U.S. V. Omaha Tribe, et al. on behalf of the Tribe*

WHEREAS,   the Omaha Tribe of Nebraska is a federally recognized Indian tribe organized under a constitution and bylaws approved by the Secretary of Interior on April 30, 1936, pursuant to Section 16 of the Indian Reorganization Act of June 18, 1934; and,

WHEREAS,   pursuant to Article III, Section 1 of the Constitution of the Omaha Tribe of Nebraska, the governing body of the Omaha Tribe shall be known as the Tribal Council; and,

WHEREAS,   pursuant to Article IV, Section 1(a) of the Constitution of the Omaha Tribe of Nebraska, the Tribal Council has the authority to negotiate with the Federal, State, and local governments on behalf of the Tribe, and to advise and consult with the representatives of the Department of the Interior on all activities of the Department that may affect the Omaha Tribe; and,

WHEREAS,   pursuant to Article IV, Section 1(j) of the Constitution of the Omaha Tribe of Nebraska, the Tribal Council has the authority to safeguard, promote, and enforce the peace, economy, safety, law and order and general welfare of the Tribe and the Omaha Indian Reservation; to regulate all manner of trade and commerce; to regulate all manner of criminal and non-criminal conduct, subject to any limitation of federal law; and,

and preserve the property, wildlife, and natural resources of the Tribe; and

WHEREAS, the Tribal Council finds that Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), plan to file a Complaint concurrently with a "Consent Decree" in the U.S. District Court for the District of Nebraska alleging that Defendants Omaha Tribe of Nebraska and Omaha Tribal Utility Commission (collectively the "Defendants") violated the National Primary Drinking Water Regulations ("NPDWR"), 40 C.F.R. Part 141, and Section 1431 of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300i, at the Macy Public Water Supply System ("Drinking Water System"); violated Sections 301 and 402 of the Clean Water Act ("CWA"), 42 U.S.C. 33 U.S.C. §§ 1311 and 1342, at the Macy Public Wastewater Treatment Facility ("Wastewater Facility"); and violated Section 7003 of the Solid Waste Disposal Act, as amended by and hereafter referred to as the Resource Conservation and Recovery Act ("RCRA"), and subsequent amendments, 42 U.S.C. § 6973, at the Mother Earth Recycling Center ("Recycling Facility");and,

WHEREAS, the Tribal Council finds that the United States alleges that the Defendants failed to comply with the requirements of an Administrative Order on Consent entered into by the Tribe and EPA on March 7, 2011 ("March 2011 AOC"); and,

WHEREAS, the March 2011 AOC required the Defendants to perform corrective measures to protect the environment and the health of people living, working, or traveling to Macy, Nebraska as specified in the Complaint; and,

WHEREAS, the United States on behalf of the EPA and the Tribe/ Omaha Tribal Utility Commission have agreed that settlement of the civil judicial claims as alleged in the Complaint is in the public interest and that entry of this Consent Decree without further litigation is the most appropriate way to resolve this action; and,

WHEREAS, the Consent Decree does not constitute an admission of either any facts or liability by the Tribe or the Utilities Commission; and,

WHEREAS, the Tribal Council has determined that performance of the injunctive relief and compliance reporting and record keeping set forth in the Consent Decree is in the best interest of the Tribe and the consumers of the Tribal Utilities.

NOW THEREFORE BE IT RESOLVED:

NOW THEREFORE BE IT RESOLVED:

That being fully advised in the premises, the Tribal Council hereby authorizes the Chairman to execute any and all necessary documents to effectuate the Consent Decree between the United States on behalf of the Environmental Protection Agency, the Omaha Tribe of Nebraska and the Omaha Tribal Utility Commission.

## CERTIFICATION

This will certify that the foregoing resolution was considered at a meeting of the Tribal Council of the Omaha Tribe of Nebraska, duly called and held on 10ᵗʰ of July, 2014, and was adopted by a vote of 6 FOR, 0 AGAINST and 1 NOT VOTING OR ABSENT with the Chairperson not voting. A quorum of 7 was present.

INTRODUCED BY: Owen Porter
MOTION: Doran Morris Jr
SECOND: Adriana Saunsoci

Dated: July 10, 2014.

Signed:

_Clifford A Wolf Jr_
Chairperson, Omaha Tribal Council

_[signature]_
Secretary, Omaha Tribal Council